UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| —————————————————— : | CIVIL ACTION NO.2:23-CV-3947 |
| DOWC PROVIDER SERVICES, LLC, : | (CCC-JSA) |
| ASSURED PROVIDER SERVICES, INC., : | |
| GUARANTEED PROVIDERS SERVICES, INC., : | |
| SECURE PROVIDER SERVICES, INC., : | |
| DOWC ADMINISTRATION SERVICES, LLC, : | FIRST AMENDED |
| : | COMPLAINT AND JURY |
| Plaintiffs, : | DEMAND |
| : | |
| v. : | |
| : | |
| U.S. AUTO SALES, INC., U.S. AUTO FINANCE, : | |
| INC., MILESTONE PARTNERS, LP, : | |
| MILESTONE PARTNERS FS AIV LP, : | |
| MILESTONE PARTNERS FS AIV 2 LP, : | |
| MILESTONE PARTNERS FS AIV 3A LP, : | |
| MILESTONE PARTNERS FS AIV 3B LP, : | |
| MILESTONE PARTNERS FS AIV 3C LP, : | |
| MILESTONE PARTNERS FS AIV 3 BUYER LP, : | |
| WESTLAKE SERVICES, LLC. d/b/a : | |
| WESTLAKE FINANCIAL, WESTLAKE : | |
| PORTFOLIO MANAGEMENT, LLC, : | |
| JOHN DOES 1-20 AND ABC CORPS. 1-20, : | |
| : | |
| : | |
| Defendants. : | |
| —————————————————— : | |

Plaintiffs, DOWC PROVIDER SERVICES ("DPS"), LLC, ASSURED PROVIDER

SERVICES, INC. ("APS"), GUARANTEED PROVIDER SERVICES, INC. ("GPS"), SECURE

PROVIDER SERVICES, INC. ("SPS") and DOWC ADMINISTRATION SERVICES, LLC

("DOWC ADMIN") (collectively "DOWC") by and through its undersigned counsel, states for its

First Amended Complaint ("Amended Complaint") against Defendants U.S. AUTO SALES, INC.

("USA"), U.S. AUTO FINANCE, INC. ("USAF") (USA and USAF are collectively referred to as

"USA Sales"), MILESTONE PARTNERS, LP, MILESTONE PARTNERS FS AIV LP,

MILESTONE PARTNERS FS AIV 2 LP, MILESTONE PARTNERS FS AIV 3A, LP, MILESTONE PARTNERS FS AIV 3B LP, MILESTONE PARTNERS FS AIV 3C LP, MILESTONE PARTNERS FS AIV 3 BUYER LP (collectively "Milestone"), WESTLAKE SERVICES, LLC. d/b/a WESTLAKE FINANCIAL ("Westlake") and WESTLAKE PORTFOLIO MANAGEMENT, LLC ("Westlake Portfolio Management"), JOHN DOES 1-20, and ABC CORPS. 1-20 as follows:

## NATURE OF THE ACTION

1.    This matter arises out of a contractual relationship between DOWC and USA Sales for the sale of DOWC finance and insurance products ("DOWC products") to consumers that purchased motor vehicles from USA in cash or that were financed through USAF, USA, and other lenders. USA Sales collected funds for the sale of DOWC Products, from consumers and their lenders, but failed to remit the funds to DOWC to make the contracts effective, or "in force," for the consumer's motor vehicle repair coverage and other protection.

2.    Unbeknownst to DOWC, in April 2023, USA Sales ceased operations which happened, based upon information and belief, at the direction of its owners Milestone, USA Sales' CEO Robert Andersen, and CFO Christian Rudolph.  At the time that USA Sales ceased operations it had collected millions of dollars from consumers and lenders for its sale of DOWC's Products but failed to remit payment to DOWC to put 20,198 DOWC Products in force to ensure protection of consumers that paid USA Sales for those Products.

3.    USA Sales and Milestone, owe DOWC over $17,000,000.00 arising from the Agreements. DOWC has made numerous demands to USA Sales and Milestone for, *inter alia*, the funds to activate the unpaid consumer contracts so the breakdown protection, for which the consumers had paid, would become effective.  USA Sales and Milestone retained, or directed retention of, the

consumer funds paid to them and failed to remit payment to DOWC to put the consumer contracts in force.

4.    When USA Sales ceased operations, Westlake and/or Westlake Portfolio Management announced that it was taking over the servicing of USA Sales financing, worth over $700 million, which includes funds that consumers financed or paid for the DOWC products. DOWC did not receive those funds. Upon information and belief, there are several servicing entities also providing servicing for USA Sales financing and they are identified in the Amended Complaint as ABC Corps. 1-5.

5.    Westlake, Westlake Portfolio Management, and ABC Corps. 1-5 collected, have retained, and continue to collect consumer funds that should be paid to DOWC for the 20,198 DOWC Products that USA Sales sold to consumers.

6.    Moreover, and upon information and belief, USA Sales issued Asset-Backed Securities ("ABS") through a syndicate of companies including ABC Corps. 6-10 and 11-15. ABC Corps. 6-10 were "issuers" of the USA Sales' ABS or "trustees" for the ABS transaction. ABC Corps. 11-15 were investors in the USA Sales' ABS which are comprised of defective consumer loans arising from USA Sales and Milestone's violations of Federal lending and disclosure laws. Those defects arise from USA Sales' misrepresentation on the consumer's Retail Installment Sales Contracts ("RISC") in misrepresenting to consumers, in violation of the Federal Truth-in-Lending Act, that DOWC was a third-party to which payments for the vehicle service contracts were made. Upon information and belief, ABC Corps. 11-15 have the contractual right to demand that USA Sales, Milestone, Westlake, Westlake Portfolio Management and ABC Corps. 1-10 and 16-20 cure the loan defects by paying funds for the outstanding balance owed to DOWC so it can put the DOWC Products in force for the consumers.

## **PARTIES**

7.  DOWC Provider Services, LLC ("DPS") is a New Jersey limited liability company with principal offices located at 199 Pomeroy Road, Parsippany, New Jersey 07054.  DPS's member is Dealer Owned Warranty Company, LLC, a New Jersey limited liability company.

8.  Assured Provider Services, Inc. ("APS") is a New Jersey corporation with principal offices located at 199 Pomeroy Road, Parsippany, New Jersey 07054. APS is a New Jersey corporation.

9.  Guaranteed Provider Services, Inc. ("GPS") is a New Jersey corporation with principal offices located at 199 Pomeroy Road, Parsippany, New Jersey 07054. GPS is a New Jersey corporation.

10. Secure Provider Services, Inc. ("SPS") is a New Jersey corporation with principal offices located at 199 Pomeroy Road, Parsippany, New Jersey 07054.  SPS is a New Jersey corporation.

11. DOWC Administration Services, LLC ("DOWC Admin") is a New Jersey limited liability company with principal offices located at 199 Pomeroy Road, Parsippany, New Jersey 07054. DOWC Admin's member is Dealer Owned Warranty Company, LLC, a New Jersey limited liability company.

12. USA is a Georgia Corporation with its principal offices located at 2875 University Parkway, Lawrenceville, GA 30043.  USA is not a citizen of New Jersey.

13. USAF is a Delaware Corporation with its principal offices located at 2875 University Parkway, Lawrenceville, GA 30043.  USAF is not a citizen of New Jersey.

14. Milestone is a Pennsylvania Limited Partnership with principal offices located at 797 East Lancaster Ave., Suite 200, Villanova, PA 19085 and since 2015, it is the owner of USA Sales. (https://www.milestonepartners.com/milestone-portfolio/usauto-sales/)    Milestone's    General

Partner is Milestone Partners Management Co., GP LLC a Pennsylvania LLC.  Milestone is not a citizen of the State of New Jersey.  Milestone Partners FS AIV LP, Milestone Partners FS AIV 2 LP, Milestone Partners FS AIV 3A LP, Milestone Partners FS AIV 3B LP, Milestone Partners FS AIV 3C LP and Milestone Partners FS AIV 3 Buyer LP are Delaware limited partnerships with principal offices located at 555 East Lancaster Avenue, Suite 500, Radnor, Pennsylvania 19087 and are indirect owners of defendant USA Sales.  All the Milestone defendants are collectively referred to as "Milestone."

15. Westlake and Westlake Portfolio Management are California Limited Liability Companies with principal offices located at 4751 Wilshire Blvd., Suite 100, Los Angeles, CA.  Neither Westlake's nor Westlake Portfolio Management's members are citizens of the State of New Jersey.

16. John Does 1-20 are individuals involved in the conversion of consumer funds for the benefit of the Defendants.

17. ABC Corps. 1-5 are loan servicing companies contracted to provide, *inter alia,* loan servicing for the financing that USA Sales provides to consumers.

18. ABC Corps. 6-10 are companies that were part of USA Sales' syndicate that brought the USA Sales' ABS to the secondary market, including trustees, a trust, underwriters, and servicers.

19. ABC Corps. 11-15 are the investors in the USA Sales' ABS.

20. ABC Corps. 16-20 are entities that provide other services to USA Sales for the ABS offered to investors.

## JURISDICTION AND VENUE

21. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 in that the Plaintiffs are of different citizenship than the Defendants and the amount in controversy exceeds $75,000.00.

22. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 in that the Plaintiffs seek declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S. Code §2201 because Plaintiffs request that the court declare the rights and other legal relations of the parties.

23. Venue is proper in this Court in that all the Defendants are subject to the personal jurisdiction of the United States District Court District of New Jersey.  Further, USA agreed to New Jersey as the sole and exclusive venue for the resolution of all disputes arising out of the agreements between the parties.

## STATEMENT OF FACTS

24. DOWC sells and administers finance and insurance products ("DOWC Products") for the automotive industry.

25. DOWC Products are sold through, inter alia, motor vehicle dealerships by way of Administration and Provider Agreements.

26. The Provider Agreement identifies the relationship and the obligations between DOWC and the motor vehicle dealers, to include sale, remittance, coverage, and payment obligations.

27. The Administration Agreement defines the administrative duties, including processing of claims, that DOWC undertakes on behalf of the motor vehicle dealership that sells DOWC Products.

28. On September 1, 2017, DOWC and USA entered into a Provider Agreement ("Provider Agreement") in which USA, among other things, appointed DOWC as the exclusive provider of the DOWC Products.

29. On September 1, 2017, DOWC and USA entered into an Administration Agreement ("Administration Agreement"), in which USA, among other things, engaged DOWC to exclusively provide administration services to USA.

30. At the time DOWC and USA entered into the Agreements, Milestone was the owner of USA Sales and dominated its operations.

31. In the Administration Agreement, USA Sales agreed that it intended to be the obligor, or provider, under the DOWC Products sold to consumers.

32. In other words, USA Sales agreed to be the party responsible for, *inter alia,* the payment of consumer repair claims, and consumer refunds, asserted under the DOWC Products.

33. In exchange for the ability to sell DOWC Products, USA Sales and DOWC agreed that DOWC would retain an amount for its administration services and "Reserves" ("Reserves") for each product sold.

34. Both DOWC and USA Sales retained portions of the funds paid for the DOWC Products as Reserves for future customer claims.

35. USA Sales was aware of the importance of the DOWC Products for consumers because those products protected consumers from costly automotive repairs, ensured the vehicles remained on the road for safe use, and improved loan performance.

36. The DOWC Products enhanced the value of the vehicle for USA Sales because the products provided repair coverage if a breakdown occurred and made it less likely the consumer would abandon the vehicle or default on their loan obligations.

37. The Parties' relationship continued under the Provider and Administration Agreements between 2017 and October 2020 and during this time, DOWC and USA collected Reserves and paid covered consumer claims under the various DOWC Products.

38. Further during this time, USA Sales directed DOWC to pay claims which USA Sales identified as "goodwill payments" for consumer claims that were not covered repairs under the DOWC Products ("Goodwill Payments").

39. In October 2020, the Parties agreed to amend specific provisions in the Provider and Administration Agreements as an "Amendment to Provider and Administrative Agreements" ("Amendment").

40. The October 2020 Amendment changed the relationship between the parties as far as USA Sales would pay an agreed Reserve and premium to DOWC for each DOWC Product that it sold to a consumer and an administration fee to DOWC.

41. At that time, DOWC was holding a positive reserve for USA Sales to cover and pay for claims made under the DOWC Products that USA Sales sold.

42. In the Amendment, the Parties also agreed that USA Sales would retain the risk (payment of the claims and consumer refunds) associated with the DOWC Product that it sold.

43. DOWC agreed to accept a fixed amount per DOWC Product sold for Reserves and administration fee subject to an increase every calendar quarter.

44. The Amendment required that USA Sales shall pay all amounts due to DOWC in a timely manner, satisfied via Automated Clearing House ("ACH") payments and DOWC's remit policy, including claims and refunds for cancellations.

45. In the October 2020 Amendment, USA Sales expressly assumed the transfer of risk related to DOWC Products along with the obligation to pay consumer claims.

46. Through monthly invoices, DOWC notified USA Sales of consumer claims, fees, and balances for DOWC Products.

47. If USA Sales did not remit premium and administration costs for the DOWC Product, the Provider and Administration Agreements expressly stated that the DOWC Product would not be "in force" or "otherwise activated or valid."

48. The Provider and Administration Agreements also expressly disclaimed and denied any principal and agent, employer and employee, partners, or joint venturer relationship.

49. The only relationship between the parties was that DOWC was a provider and/or administrator of contracts and programs that were offered and sold by USA Sales to consumers.

50. The provisions in the Provider and Administration Agreements not addressed in the Amendment stayed in full force and effect.

51. For the remainder of 2020 and into the first two quarters of 2021, DOWC and USA Sales engaged in business as directed by the Agreements and the Amendment – to wit, USA Sales sold DOWC Products, paid a fee to DOWC for each product, and USA Sales paid consumer claims and refunds which DOWC billed to USA Sales monthly.

52. Beginning in or around September 2021, USA Sales short paid the monthly invoices for DOWC Products sold, consumer claims and refunds, and other fees.

53. DOWC alerted USA Sales to the short-fall payments and requested that the balance due be brought current.

54. USA Sales was aware that it had collected funds for the sale of DOWC Products but was not paying DOWC for those Products.

55. Under the Agreements between the Parties, and per the plain terms of the consumer contracts for the DOWC Products, the DOWC Products were not "in effect" for the consumers until USA Sales paid DOWC.

56. Based on the long-standing relationship between DOWC and USA Sales, DOWC came to an agreement with USA Sales to allow it to pay a fixed weekly amount to (1) satisfy the high rate of consumer repair claims; (2) pay for fees and Reserves associated with the administration of the claims; and (3) if a positive balance existed at the end of each month after application of the funds to repairs, fees and reserves, the funds would be used to put a portion of the consumer contracts sold that month in force.

57. At all times, USA Sales had access to DOWC's administration system and other technology so that it could verify the number of consumer contracts "in force" or pending due to USA Sales' failure to pay DOWC for the Products.

58. At all times during the parties' relationship, DOWC would defer to USA Sales as to consumer repairs for which the contract was not paid for a determination of whether USA Sales wanted to pay the claim as a "Goodwill Repair."

59. If USA Sales approved the Goodwill Repair, DOWC would administer and pay the claim accordingly and include the claim payment on USA Sales' monthly invoice to reimburse DOWC.

60. If USA Sales did not approve the Goodwill Repair, DOWC would not approve or pay the claim.

61. At all times, USA Sales was aware that it was collecting consumer funds for the DOWC Products but not remitting those funds to put the DOWC Products "in force."

62. The payment arrangement with USA Sales continued through the fourth quarter of 2021 when DOWC spoke with USA Sales' CEO to advise that the balance due had to be brought current.

63. DOWC was (1) advised that USA Sales, at the direction of Milestone, was going through a round of ABS sales in which USA Sales would bundle the consumer loans and sell them in the ABS market and (2) ensured payment to DOWC when the ABS sale occurred.

64. An ABS consists of consumer loans for the auto financing for a vehicle.

65. The ABS process begins when an issuer, such as USA Sales, conveys assets to a Trust.

66. After the conveyance, the issuer owes duties to the trust such as a duty to repurchase defective loans.

67. Among other things the trust is responsible for holding the trust's res which include the assets that back the trust.

68. The trust has legal personality and acts through its trustee who is a fiduciary for the investors collectively.

69. The trust enters contracts with other persons, including borrowers who are obligated to pay money on the debts that the trust holds, a servicer (an agent of the trust) that collects money from the borrowers, a payment agent (an agent of the trust that disburses moneys to the investors) and other entities such as underwriters and dealers who are involved in the marketing of the ABS.

70. The investor in the ABS holds a certificate as evidence of certain disbursements to the investor from the trust.

71. The investor also has the power to require the cure of defects in the trust's res (the vehicle loans) or require repurchase of the loan.

72. The Trust agreement and the Pooling and Servicing Agreement ("PSA")define the duties, rights, and obligations of the parties involved in an ABS transaction.

73. Upon information and belief, USA Sales, Milestone, Westlake, Westlake Portfolio Management, and the ABC Corps. 1-20 are parties to a PSA for the purchase of the USA Sales' ABS.

74. USA Sales represented to DOWC that, in the Spring of 2022, the ABS sale would close and USA Sales would bring current the past due amount owed to DOWC.

75. USA Sales also informed DOWC that USA Sales operations were under the dictate and control of its owners, Milestone Partners.

76. The Spring months of 2022 passed, and the balance due continued to grow until the Summer of 2022 when USA made a larger than normal monthly payment.

77. However, even with the larger than normal monthly payment, USA Sales had a significant balance due to DOWC for products that USA Sales had sold to consumers, collected funds, and failed to remit to DOWC.

78. DOWC engaged in discussions with USA Sales' CEO Andersen in which Andersen represented that weekly payments would resume to reduce the balance owed to DOWC.

79. During this time, USA Sales was aware that approximately one year of consumer contracts remained unpaid to DOWC and were not "in force."

80. USA Sales was aware that its failure to pay for the DOWC Products left the consumers with a DOWC Product that was not "in force" and the number of those consumers was growing each month when USA Sales short-paid its invoices.

81. In the fall of 2022, Andersen again represented that USA Sales was engaging in another ABS sale, which included consumer loans for the vehicles and DOWC Products sold by USA Sales.

82. In December 2022, DOWC again informed USA Sales that the balance due continued to grow, and, despite the long-standing relationship, DOWC could no longer wait for USA Sales' payments and the balance due had to be paid.

83. USA Sales continued to send late and sporadic weekly payments until February 2023.

84. DOWC informed USA Sales that it was seriously delinquent and required USA Sales to bring its accounts current by paying for the unpaid DOWC Products dating back to 2021, unreimbursed claims, and other fees.

85. USA Sales CEO Andersen and CFO Rudolph engaged in numerous discussions with DOWC and requested, and were provided, the data to support the amount due and owing.

86. DOWC reminded USA Sales that the amount due and owing was clearly set forth in the statements that USA Sales received every month, including claims paid at the explicit direction of USA Sales, Reserve reports and USA Sales' access to the custom technology that DOWC built for it.

87. DOWC reminded USA Sales CEO Andersen of their numerous discussions over the prior year in which Andersen was informed of USA Sales' delinquency in paying for consumer contracts.

88. Andersen and Rudolph requested phone conferences with DOWC to discuss the data and payment for the unpaid consumer contracts.

89. According to Andersen, Milestone Partners was fully aware that USA Sales did not remit consumer funds to DOWC, as reflected in the Truth in lending Act disclosures on its consumer Retail Installment Sales Contracts ("RISC").

90. USA Sales' failure, with Milestone's knowledge, to pay to DOWC the amount it charged to a consumer for the DOWC Product, as itemized on the RISC, made the consumer loans defective and subject to recission under the Federal Truth-in-Lending Act.

91. The parties' discussions continued throughout the month of March and April.

92. On April 27, 2023, US Auto Sales, through Andersen, represented to DOWC that it had "productive internal and external dialog" regarding the amount due to DOWC for the unpaid DOWC Products.

93. On April 28, 2023, DOWC met, via video conference, with Andersen, Rudolph and other USA Sales' representatives including a business restructuring specialist from BDO United States, to discuss USA Sales' and Milestone's payment to DOWC for the sold and unpaid DOWC's Products.

94. USA Sales represented that they were working on a solution to the problem with Milestone, including payment to DOWC for all the DOWC Products and would have an answer the week of May 1, 2023.

95. However, DOWC was unaware that Milestone had directed USA Sales to cease operations on April 24. https://www.11alive.com/article/money/business/us-auto-sales-closes-all-dealerships/85-2a85dc4e-5cfc-48f0-9f08-3bfd82fd6e6f.

96. USA Sales did not respond to DOWC during the month of May or June despite numerous requests made by DOWC for payment of the DOWC Products that USA Sales sold to consumers, collected funds, and failed to remit to DOWC.

97. In June 2023, DOWC learned that Westlake Portfolio Management had taken over the servicing of the USA Sales loans. https://myaccount.wpmservicing.com/usAutoWelcome/.

98. DOWC immediately contacted Westlake and Westlake Portfolio Management to inform them that DOWC had an outstanding balance for the DOWC Products sold by USA Sales and for which USA Sales did not pay DOWC and requested that they forward payments made on the USA Sales' loans, related to the DOWC Products, to DOWC.

99. DOWC also informed Westlake and Westlake Portfolio Management that USA Sales' collection of consumer funds for the DOWC Products itemized on the RISC and USA Sales' failure to pay those funds to DOWC made the consumer loans defective.

100.    Despite follow up conferences with Westlake and Westlake Portfolio Management, the consumer Products sold by USA Sales remain unpaid to DOWC and are not "in force."

101.    Westlake and Westlake Portfolio Management are collecting funds from consumers that include the funds to pay for the DOWC Products.

102.    In addition, at least one consumer informed DOWC that Westlake and Westlake Portfolio Management repossessed a vehicle for which they provide servicing for USA Sales, Milestone, and ABC Corps. 6-15.

## COUNT I
## BREACH OF CONTRACT - USA SALES

103.     DOWC hereby incorporates the allegations set forth in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

104.    DOWC and USA Sales were parties to, *inter alia,* four agreements, a Provider Agreement, Remit Agreement, Administration Agreement and the Amendment to Provider and Administration Agreement.

105.    Pursuant to those Agreements, DOWC provided DOWC Products to USA Sales so it could in turn sell those products to consumers.

106.    In exchange for the sale of the DOWC Products, USA Sales was obligated to pay DOWC to put the consumer products "in force."

107.    Between November 2021 and April 2023, USA Sales failed to pay DOWC for the DOWC Products.

108.     Between November 2021 and April 2023, DOWC performed its obligations under the Agreements, administering claims, paying consumer claims, offering goodwill payments at USA Sales direction, and providing USA Sales with access to DOWC's administration system and other technology.

109.     USA Sales' failure to pay for the DOWC Products that USA Sales sold to consumers is a breach of the express provisions of the Agreements, including, but not limited to, paragraph 5 of the 2017 Provider Agreement, paragraph 4 of the 2017 Administration Agreement, and paragraph 4(a) of the 2020 Amendment.

110.     USA Sales' failure to reimburse DOWC for the consumer claims paid by DOWC is a breach of the express provisions of the 2020 Amendment, paragraphs 4(a) and 6(k).

111.     As a result of USA Sales' breaches of the Agreements, DOWC has been caused damages in the amount of $17,891,519.00.

WHEREFORE, DOWC demands judgment against USA Sales in the amount of $17,891,519.00 together with interest, costs of suit, attorney's fees and such other relief that this Court deems equitable and just.

## COUNT II
## BREACH OF CONTRACT USA SALES

112.     DOWC hereby incorporates the allegations set forth in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

113.     The Agreements between the parties required USA Sales to represents its compliance with, *inter alia,* federal law and, at least thirty (30) days in advance, advise DOWC of any discontinuance of its business.

114.    USA Sales breached the express provisions of the Agreements when it failed to comply with federal law, specifically the Truth-in-Lending Act, when it expressly identified the vehicle service contract on the RISC and failed to pay DOWC for the DOWC Product.

115.    USA Sales breached the express provisions of the Agreements when it did not provide DOWC with notice of its business discontinuation despite numerous telephone calls and conferences that occurred at or near the time of the discontinuance.

116.    As a result of USA Sales breaches of the representations made in the Agreements, DOWC has been caused damages in the amount of $17,891,519.00.

WHEREFORE, DOWC demands judgment against USA Sales in the amount of $17,891,519.00 together with interest, costs of suit, attorney's fees and such other relief that this Court deems equitable and just.

**COUNT III**
**CONVERSION**

117.    DOWC hereby incorporates the allegations set forth in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

118.    USA Sales sells used automobiles to consumers through its dealerships in Georgia, Florida, North Carolina, South Carolina, and Tennessee.

119.    USA Sales CEO Robert Andersen confirmed that USA Sales took operational direction from its owners, Milestone.

120.    When USA Sales entered a transaction with a consumer for the sale of an automobile, the consumer also purchased a DOWC Product, specifically a vehicle service contract to provide coverage for certain repairs.

121.    DOWC was the exclusive provider of DOWC Products to USA Sales during the relationship between the parties.

122.    As part of the transaction between USA Sales and the consumer, a RISC was prepared and DOWC's Product was listed on the RISC as an item for which payment to a third-party payee would be made.

123.    When USA Sales consummated the deal with the consumer, DOWC had a right to payment for the DOWC Product sold as part of the transaction.

124.    USA Sales and Milestone interfered with that right by not remitting payment to DOWC for the DOWC Products sold to consumers.

125.    USA Sales' and Milestone's interference with DOWC's right, along with each other's aiding or assisting in interfering with that right, constitutes wrongful possession of DOWC's funds.

126.    USA Sales' and Milestone's conduct in keeping the funds owed to DOWC for the DOWC Products that USA Sales sold to consumers constitutes a conversion of DOWC's funds.

127.    USA Sales and Milestone are liable to DOWC for the funds that they collected from consumers and converted to themselves.

128.    USA Sales and Milestone are liable to DOWC, for converted funds, in the amount of $17,891,519.00.

WHEREFORE, DOWC demands judgment against USA Sales and Milestone in the amount of $17,891,519.00 together with punitive damages, costs, attorneys fees and such other relief that this Court deems equitable and just.

## COUNT IV
## FRAUD

129.    DOWC hereby incorporates the allegations set forth in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

130.    USA Sales and Milestone represented to DOWC on numerous occasions that DOWC would be paid in full for the outstanding balance related to the DOWC Products that USA Sales sold to consumers.

131.    USA Sales and Milestone represented that they would pay DOWC for the DOWC Products sold on each RISC prepared as part of the USA Sales' consumer loan financing.

132.    USA Sales and Milestone knew that they needed to include the DOWC Products in the consumer loan transactions to provide consumers with coverage for any covered repairs and to protect the motor vehicle, the asset, which securitized the USA Sales' consumer loan.

133.    Further, USA Sales CEO Robert Andersen represented to DOWC, on numerous occasions, that the company was working with Milestone internally to pay DOWC in full for the 20,198 DOWC Products.

134.    USA Sales and Milestone made these representations with the intent that DOWC rely on the representations.

135.    DOWC justifiably relied on the representations and continued to offer DOWC Products to USA Sales for its sale of the Products to consumers.

136.    USA Sales' and Milestone's representations were false and DOWC was not paid for the 20,198 DOWC Products.

137.    USA Sales' and Milestone's misrepresentations, that DOWC would be paid in full, caused DOWC damage in the amount of $17,891,519.00.

138.    USA Sales' and Milestone's misrepresentations were the direct cause of DOWC's damage.

139.    WHEREFORE, DOWC demands judgment against USA Sales and Milestone in the amount of $17,891,519.00 together with punitive damages, costs, attorneys fees and such other relief that this Court deems equitable and just.

**COUNT V**
**DECLARATORY JUDGMENT (28 U.S.C. §2201)**
**(PLED IN THE ALTERNATIVE)**

140.    DOWC hereby incorporates the allegations set forth in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

141.    Whereas an actual controversy exists between the Parties.

142.    USA Sales and Milestone have infringed upon DOWC's contractual rights and breached their obligations to DOWC.

143.    USA Sales and Milestone have failed to remit payment to DOWC for DOWC Products sold to consumers.

144.    If USA Sales and Milestone do not remit full payment to DOWC for the DOWC Products that USA Sales sold to consumers, then, in the alternative, DOWC requests that the DOWC Products be declared void.

145.    USA Sales' and Milestone's failure to remit payment to DOWC for the DOWC Products results in "no coverage" for the consumer contracts due to non-payment.

146.    The consumer contracts for the DOWC Products that USA Sales sold to consumers expressly disclaim coverage if USA Sales fails to remit payment to DOWC.

147.    USA Sales and Milestone have failed to remit payment for 20,198 pending DOWC Products.

148.    DOWC seeks declaratory judgment, based on the contractual terms between it and USA Sales and the contracts sold to the consumers.

149.     Without payment in full for the DOWC Products, DOWC does not have adequate remedies at law.

150.     DOWC requests that the Court, through declaratory relief, and in the alternative, enter judgment voiding the 20,198 DOWC Products for which US Auto and Milestone did not remit payment to DOWC.

WHEREFORE, DOWC demands judgment against U.S. Auto and Milestone as follows:

(a)     Declaring that DOWC has not been paid for the 20,198 DOWC Products that USA Sales sold to consumers;

(b)     Declaring that USA Sales is in violation of DOWC's contractual rights set forth in the Agreements;

(c)     Declaring that DOWC has the contractual right to terminate and void the DOWC Products that USA Sales sold to consumers and for which it did not remit payment to DOWC;

(d)     Declaring that USA Sales and Milestone are the responsible parties for all consumer refunds and any claims made by consumers related to the DOWC Products.

(e)     Awarding DOWC all damages, compensatory and punitive;

(f)     Awarding court costs and attorneys fees; and

(g)     Awarding such other relief that this Court deems equitable and just.

### COUNT VI
### BREACH OF THE IMPLIED COVENANT OF
### GOOD FAITH AND FAIR DEALING

151.      DOWC hereby incorporates the allegations set forth in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

152.      In addition to the express terms in the Agreements, every contract in New Jersey contains an implied covenant of good faith and fair dealing.

153.    This means that, even though not specifically stated in the contract, it is implied or understood that each party to the contract must act in good faith and deal fairly with the other party in performing and enforcing the terms of the contract.

154.    USA Sales and Milestone acted contrary to the implied covenant of good faith and fair dealing when it represented to DOWC that it would be paid in full on numerous occasions and DOWC in good faith continued its administration and provision of the DOWC Products.

155.    USA Sales and Milestone acted contrary to the implied covenant of good faith and fair dealing when it engaged DOWC in numerous telephone and video conferences with the pretense of making payment to DOWC for the DOWC Products that USA Sales sold to consumers but for which they failed to remit payment to DOWC.

156.    USA Sales' and Milestone's breach of the implied covenant of good faith and fair dealing has prevented DOWC from receiving the "fruits of the contracts."

157.    As a result of USA Sales' and Milestone's breach of the implied covenant of good faith and fair dealing, DOWC has been damaged in an amount not less than $17,891,519.00.

WHEREFORE, DOWC demands judgment against USA Sales and Milestone in the amount of $17,891,519.00 together with punitive damages, costs, attorneys fees and such other relief that this Court deems equitable and just.

## COUNT VII
## ALTER EGO - MILESTONE

158.    DOWC hereby incorporates the allegations set forth in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

159.    USA Sales' CEO represented in numerous discussions, and in e-mail to USA Sales employees, that Milestone was the owner of USA Sales and as such exercised control and dominated the operations of USA Sales.

160.    Upon information and belief, as the owner of USA Sales, Milestone controlled USA Sales' operational funds and received USA Sales' profits, which included, in part, consumer funds that USA Sales retained and did not remit to DOWC to put the DOWC Products "in-force."

161.    Upon information and belief, rather than remit the funds owed to DOWC for the DOWC Products that USA Sales sold to consumers, Milestone retained the funds as profit.

162.    Adhering to the existence of two business structures, USA Sales and Milestone, would perpetrate a fraud or injustice upon DOWC and the consumers to which USA Sales sold products and collected funds, but for which they failed to remit the funds to DOWC to put the DOWC Products in force.

163.    Milestone's conduct in dominating control over USA Sales and demanding that USA Sales follow its direction has resulted in fraudulent and injurious consequences for DOWC and consumers.

164.    Milestone used USA Sales to perpetrate a fraud and fund conversion upon DOWC, and the consumers that purchased the DOWC Products.

165.    As a result of Milestone's pervasive, dominating, and fraudulent conduct, DOWC has been damaged in the amount of $17,891,519.00.

WHEREFORE, DOWC demands judgment against Milestone in the amount of $17,891,519.00 together with punitive damages, costs, attorneys fees and such other relief that this Court deems equitable and just.

## COUNT VIII
## UNJUST ENRICHMENT

166.    DOWC hereby incorporates the allegations set forth in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

167.    In or around June 2023, Westlake and/or Westlake Portfolio Management announced to the public that it was taking over the servicing of the USA Sales' loans with a value of over $700 million.  https://myaccount.wpmservicing.com/usAutoWelcome/.

168.    Upon information and belief, Westlake and/or Westlake Portfolio Management are servicing the loans on behalf of USA Sales, Milestone, and ABC Corps. 1-20.

169.    The loans that Westlake and/or Westlake Portfolio Management are servicing include loans in which (1) USA Sales sold DOWC Products to consumers as evidenced on the RISC that USA Sales prepared, (2) the DOWC Products were financed as part of the loan transaction, (3) payment was never made to DOWC for the DOWC Products and (4) the DOWC Products are not in force.

170.    DOWC had a right to payment for the DOWC Products that USA Sales sold to consumers.

171.     Westlake and/or Westlake Portfolio Management's retention, through the loan servicing, of consumer funds paid to USA Sales for the DOWC Products, without remitting those funds to DOWC unjustly enriches Westlake, Westlake Portfolio Management, USA Sales, Milestone, and ABC Corps. 1-20.

172.    As a result of the retention of the consumer funds related to the DOWC Products, DOWC has been harmed.

173.    As a result of the actions undertaken by Westlake, Westlake Portfolio Management, USA Sales, Milestone, and ABC Corps. 1-20, DOWC has been damaged in the amount of $17,891,519.00.

WHEREFORE, DOWC demands judgment against USA Sales, Milestone, Westlake and/or Westlake Portfolio Management, and ABC Corps. 1-20 in the amount of $17,891,519.00 together with damages, costs, attorneys fees and such other relief that this Court deems equitable and just.

## COUNT IX
## THIRD-PARTY BENEFICIARY

174.    DOWC hereby incorporates the allegations set forth in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

175.    Westlake and/or Westlake Portfolio Management represent to the public that they are the servicers of USA Sales loan portfolio worth $741,473,258.

176.    The USA Sales' loan portfolio is comprised of loans made to consumers in which DOWC Products were part of the financing.

177.    USA Sales has not paid DOWC for those DOWC products.

178.    The loan documents, including the RISC, between USA Sales and consumers expressly identify DOWC as an intended third-party beneficiary, as part of the financing, for USA Sales' sale of the DOWC Products.

179.    DOWC was the exclusive provider of finance and insurance products to USA Sales from 2017 to 2023.

180.    DOWC expected that as a third-party beneficiary of the USA Sales' consumer loans, it would be paid in full for the DOWC Products that USA Sales sold to consumers and itemized on the RISCs.

181.    Although an intended third-party beneficiary of the USA Sales' consumer loan contracts, DOWC was not paid for 20,198 DOWC Products.

182.     As an intended third-party beneficiary of the USA Sales' consumer loans, DOWC has a right to payment for the 20,198 DOWC Products from the funds collected by Westlake and/or Westlake Portfolio Management.

183.     Despite DOWC's demands for payment to put the 20,198 DOWC Products in force for consumers, Westlake and/or Westlake Portfolio Management have refused to remit payment to DOWC.

184.     As a result of Westlake's and/or Westlake Portfolio Management's failure to make payment to DOWC, as an intended third-party beneficiary of the USA Sales' consumer loans, DOWC has been damaged in the amount of $17,891,519.00.

WHEREFORE, DOWC demands judgment against USA Sales, Milestone, Westlake and/or Westlake Portfolio Management in the amount of $17,891,519.00 together with damages, costs, attorneys fees and such other relief that this Court deems equitable and just.

## COUNT X
## DECLARATORY JUDGMENT 28 U.S.C. §2201
## (CONSTRUCTIVE TRUST)

185.     DOWC hereby incorporates the allegations set forth in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

186.     An actual controversy exists between the Parties.

187.     USA Sales, Milestone, Westlake, and Westlake Portfolio Management have infringed upon DOWC's right to payment for the DOWC Products that are included in the loan servicing undertaken by Westlake and/or Westlake Portfolio Management.

188.     USA Sales, Milestone, Westlake, and Westlake Portfolio Management have failed to remit payment to DOWC for DOWC Products.

189.    A portion of the loan payments made to Westlake and/or Westlake Portfolio Management, as servicer of the loans, is for the DOWC Products that USA Sales and Milestone sold to consumers but failed to remit to DOWC.

190.    DOWC has not received payment for 20,198 DOWC Products and the cost to put those DOWC Products in force is $17,891,519.00.

191.    DOWC requests that the Court, through declaratory relief, enter a judgment creating a constructive trust for the payments collected, or collected in the future, by Westlake and/or Westlake Portfolio Management in which they shall place in trust payments received and hold future payments associated with USA Sales sale of the DOWC Products and turn the funds over to DOWC to put the DOWC Products in force.

WHEREFORE, DOWC demands judgments against U.S. Auto, Milestone, Westlake and/or Westlake Portfolio Management as follows:

(a)    Declaring that DOWC has not been paid for the 20,198 DOWC Products that USA Sales sold to consumers;

(b)    Declaring that USA Sales, Milestone, Westlake, Westlake Portfolio Management are in violation of DOWC's right to receive payment for the DOWC Products;

(c)    Declaring that Westlake and Westlake Portfolio Management place the funds collected on, and future funds collected for, the USA Sales' consumer loans in a constructive trust for the benefit of DOWC;

(d)    Declaring that Westlake and Westlake Portfolio Management immediately turn over collected funds to DOWC and remit future funds to DOWC until the $17,891,519.00 owed to DOWC is paid in full.

(e)     Declaring that USA Sales and Milestone are the responsible parties for all consumer refunds and any claims made by consumers related to the DOWC Products.

(f)     Awarding DOWC all damages, compensatory and punitive;

(g)     Awarding court costs and attorneys fees; and

(h)     Awarding such other relief that this Court deems equitable and just.

**COUNT XI**
**DECLARATORY JUDGMENT 28 U.S.C. §2201**
**(AGAINST ALL DEFENDANTS TO PROTECT DOWC'S RIGHTS AS AN INTENDED THIRD-PARTY BENEFICIARY OF THE USA SALES AND CONSUMER LOANS)**

192.     DOWC hereby incorporates the allegations set forth in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

193.     DOWC was an intended third-party beneficiary of the USA Sales' consumer loans.

194.     In the RISC provided to consumers as required under the Federal Truth-in-Lending Act, DOWC was listed as a third-party payee for the vehicle service contracts that USA Sales sold to consumers.

195.     Between 2017 and 2023, DOWC was the exclusive provider of vehicle service contracts that USA Sales sold to consumers.

196.     If the RISC did not expressly name DOWC as the third-party payee, it identified a vehicle service contract as a product for which payment would be made to a third-party which is DOWC because it was the exclusive provider of the products.

197.      DOWC is an intended third-party beneficiary in the USA Sales' consumer loan transaction.

198.     Upon information and belief, USA Sales packaged the consumer loans for sale to the ABS market.

199.     However, in failing to pay DOWC as a third-party beneficiary of the consumer loans, the USA Sales' consumer loans violated the Truth-in-Lending Act and were defective.

200.     Further, upon information and belief, USA Sales, and Milestone, sold the packaged consumer loans as ABS through ABC Corps. 6-10 and/or ABC Corps. 16-20 to the investors identified as ABC Corps. 11-15.

201.     In the normal course, such a security sale involves a trust, trustee, underwriters, and services who are unknown at this time but identified as ABC Corps. 6-10 and 16-20.

202.     Westlake and/or Westlake Portfolio Management and ABC Corps. 1-5 were hired to service the consumer loans that make up the USA Sales' ABS.

203.     In the normal course of an ABS transaction, a pooling and servicing agreement ("PSA") would clarify the rights and obligations between USA Sales, Westlake, Westlake Portfolio Management, and ABC Corps. 1-20.

204.     In the PSA, the parties set forth their rights, and, upon information and belief, the ABC Corps. 11-15 would retain the right to require USA Sales, Westlake, Westlake Portfolio Management, ABC Corps. 1-5, ABC Corps 6-10, and/or ABC Corps. 16-20 to cure any defects in the underlying loan transactions.

205.     Upon information and belief, ABC Corps. 11-15 have the right to require USA Sales, Westlake, Westlake Portfolio Management, ABC Corps. 1-5, ABC Corps. 6-10, and ABC Corps. 16-20 to pay to DOWC, as an intended third-party beneficiary of the consumer loans, the total amount due for the DOWC Products sold as part of the loan transactions.

206.     DOWC requests that the Court, through declaratory relief, enter a judgment ordering that ABC Corps. 11-15 exercise their rights under the PSA and ordering payment to

DOWC as an intended third-party beneficiary of the USA Sales' consumer loan transactions to cure the defects in the consumer loans.

WHEREFORE, DOWC demands judgments against the Defendants as follows:

(a)    Declaring that DOWC has not been paid for the 20,198 DOWC Products that USA Sales sold to consumers;

(b)    Declaring that DOWC is an intended third-party beneficiary of the USA Sales' consumer loan transactions;

(c)    Declaring that the USA Sales' consumer loan transactions are defective due to USA Sales' material misrepresentations on the RISCs that it made payment to DOWC for the DOWC Products when it did not;

(d)    Declaring that ABC Corps. 11-15 exercise their rights under the PSA requiring USA Sales, Westlake, Westlake Portfolio Management, ABC Corps. 1-5, ABC Corps. 6-10, ABC Corps. 16-20, and Milestone cure the defects in the consumer loans that were created when USA Sales materially misrepresented that payment was made for the vehicle service contracts to the intended third-party beneficiary DOWC;

(e)    Declaring that ABC Corps. 11-15 exercise their rights under the PSA, for the benefit of the intended third-party beneficiary DOWC, and demand Westlake, Westlake Portfolio Management, ABC Corps. 1-5, ABC Corps. 6-10, ABC Corps. 16-20, USA Sales, and Milestone cure the defects and pay $17,891,519.00 to DOWC for the unpaid DOWC Products;

(f)    Declaring that USA Sales and Milestone are the responsible parties for all consumer refunds and any claims made by consumers related to the DOWC Products;

(g)    Awarding DOWC all damages, compensatory and punitive;

(h)    Awarding court costs and attorneys fees; and

(i)    Awarding such other relief that this Court deems equitable and just.

## COUNT XII
## INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

207.    DOWC hereby incorporates the allegations set forth in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

208.    DOWC and USA Sales had a contractual relationship through which DOWC was the exclusive provider of finance and insurance products that USA Sales sold to consumers.

209.    USA Sales named DOWC as the third-party provider of the DOWC Products on the RISC that USA Sales provided to consumers in the loan transaction for the sale of a motor vehicle.

210.    USA Sales sold 20,198 DOWC Products to consumers, collected the funds, and failed to remit those funds to DOWC.

211.    DOWC acted in accordance with the Agreements in administering the DOWC Products although USA Sales did not pay for those Products.

212.    DOWC has a prospective economic or contractual business relationship with USA Sales and the consumers arising out of, and from, the sales of DOWC Product.

213.    DOWC has a reasonable expectation of payment for the DOWC Products that US Auto Sales sold as part of its consumer loan transactions, and which are now being serviced by Westlake and/or Westlake Portfolio Management.

214.    On July 11, 2023, the Chief Operating Officer of Westlake and/or Westlake Portfolio Management stated that a "third-party warranty company will take over some of the U.S. Auto Sales extended warranties."

215.    Westlake's and/or Westlake Portfolio Management's employment of a finance and insurance product supplier that is not DOWC interferes with DOWC's prospective economic and contractual advantage and gain.

216.    By hiring another provider, and not paying DOWC the funds identified on the RISC that USA Sales provided to consumers, Westlake and/or Westlake Portfolio Management, as the servicers of those loans, are interfering with DOWC's prospective economic and contractual advantage and gain and have caused DOWC damage in the amount of $17,891,519.00.

WHEREFORE, DOWC demands judgment against Westlake and/or Westlake Portfolio Management in the amount of $17,891,519.00 together with punitive damages, costs, attorneys fees and such other relief that this Court deems equitable and just.

## DEMAND FOR JURY TRIAL

DOWC hereby demands a trial by jury on all issues of the Amended Complaint so triable.

_____
RONALD J. CAMPIONE, ESQ.
Counsel for Plaintiffs,
DOWC PROVIDER SERVICES, LLC, ASSURED PROVIDER
SERVICES, INC., GUARANTEED PROVIDERS SERVICES,
INC., SECURE PROVIDER SERVICES, INC., AND DOWC
ADMINISTRATION  SERVICES, LLC


Dated: September 27, 2023