## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DOWC PROVIDER SERVICES, LLC, ASSURED PROVIDER SERVICES, INC., GUARANTEED PROVIDERS SERVICES, INC., SECURE PROVIDER SERVICES, INC., and DOWC ADMINISTRATION SERVICES, LLC, | CIVIL NO: 2:23-cv-03947-CCC-JSA<br><br>(Filed Electronically)<br><br>**Motion Date: November 6, 2023** |
| Plaintiffs, | |
| v. | |
| U.S. AUTO SALES, INC., U.S. AUTO FINANCE, INC., MILESTONE PARTNERS, LP, MILESTONE PARTNERS FS AIV LP, MILESTONE PARTNERS FS AIV 2 LP, MILESTONE PARTNERS FS AIV 3A LP, MILESTONE PARTNERS FS AIV 3B LP, MILESTONE PARTNERS FS AIV 3C LP, MILESTONE PARTNERS FS AIV 3 BUYER LP, WESTLAKE SERVICES, LLC d/b/a WESTLAKE FINANCIAL, WESTLAKE PORTFOLIO MANAGEMENT, LLC, JOHN DOES 1-20, and ABC CORPS. 1-20, | |
| Defendants. | |

## WESTLAKE SERVICES, LLC AND WESTLAKE PORTFOLIO MANAGEMENT, LLC'S MEMORANDUM OF LAW SUPPORTING THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

**TROUTMAN PEPPER
HAMILTON SANDERS LLP**
A. Eli Kaplan (ID No. 310272020)
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7500
Facsimile: (757) 687-7510
eli.kaplan@troutman.com
*Attorneys for Defendants Westlake Services,
LLC d/b/a Westlake Financial and
Westlake Portfolio Management*

# TABLE OF CONTENTS

**Page**

Table of Authorities ...................................................................... iii

INTRODUCTION ........................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ........................... 3

LEGAL STANDARD ...................................................................... 6

ARGUMENT .................................................................................. 7

I.    Plaintiffs' Claim Against Westlake Services Amounts to
Impermissible Group Pleadings. ........................................... 7

II.   Count VIII: Plaintiffs Fail to State a Claim for Unjust
Enrichment Against WPM. .................................................... 8

A.    Any Benefit Plaintiffs Conferred was Conferred on U.S.
Auto, Not WPM. .......................................................... 9

B.    There is No Direct Relationship Between Plaintiffs and
WPM. ........................................................................ 11

C.    Plaintiffs Cannot Assert an Unjust Enrichment Claim
Against WPM Based on U.S. Auto's Alleged Conduct. ......... 12

D.    Plaintiffs Cannot Recover Attorneys' Fees Pursuant to a
Claim for Unjust Enrichment. ........................................ 14

III.  Count X: Plaintiffs Fail to State a Claim for Constructive Trust
Against WPM. .................................................................. 14

A.    A Constructive Trust is an Equitable Remedy Not a
Standalone Claim. ....................................................... 15

B.    Plaintiffs' Fail to Satisfy the Elements Required for the
Imposition of a Constructive Trust. ................................. 16

C.    Punitive Damages and Attorneys' Fees are Not
Recoverable in Connection with a Constructive Trust. ......... 18

# TABLE OF CONTENTS
(continued)

**Page**

IV.    Count IX: The Court Should Dismiss Plaintiffs' Claim for Third Party Beneficiary Breach of Contract .......................................19

    A.    Plaintiffs fail to Allege that any Westlake Entity is a Party to Any Relevant Contract. ................................19

    B.    Plaintiffs' Claim for Attorneys' Fees for Third Party Beneficiary Breach of Contract Should be Dismissed. ..........21

V.    Count XI: Plaintiffs Fail to State a Claim for a Declaratory Judgment .......................................................................22

    A.    Plaintiffs' Claim is Moot Because There is No Uncertainty Regarding the Parties' Rights and Plaintiffs' Alleged Damages Have Already Accrued. ..............................23

    B.    Plaintiffs Lack Standing to Compel the Investors or Owners of a Securitized Trust to Act........................................24

    C.    Plaintiffs' Claims for Attorneys' Fees and Punitive Damages Should be Dismissed Because Such Damages are Not Recoverable for Claims Based in Contract................25

VI.    Count XII: Plaintiffs Fail to State a Claim for Interference with Prospective Economic Advantage......................................25

    A.    Plaintiffs Fail to Allege WPM Acted with Malice. .................27

    B.    Plaintiffs Fail to Allege Facts Sufficient to Establish Causation....................................................28

    C.    Attorneys' Fees are Not Recoverable. .....................29

CONCLUSION .......................................................................29

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Westlake Services, LLC d/b/a Westlake Financial ("Westlake Services") and Westlake Portfolio Management, LLC ("WPM") submit this Memorandum of Law in support of their Motion to Dismiss Plaintiffs' Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## **INTRODUCTION**

For years, DOWC Provider Services, LLC, Assured Provider Services, Inc., Guaranteed Providers Services, Inc., Secure Provider Services, Inc., and DOWC Administration Services, LLC ("Plaintiffs") engaged in the business of selling and administering vehicle service contracts ("VSC") through U.S. Auto Sales, Inc. and U.S. Auto Finance, Inc. (collectively "U.S. Auto").[1] U.S. Auto sold these VSCs in connection with underlying auto loans that it was also originating and servicing. Westlake Services and WPM were not part of Plaintiffs' relationship with U.S. Auto, were not involved in selling these VSCs, and were not involved in originating the underlying auto loans.

U.S. Auto ultimately struggled financially, ceased operations, and filed for bankruptcy. When it ceased operations, it left a void. U.S. Auto sales was no longer servicing the underlying auto loans it had originated. If that void persisted,

---

[1] Westlake Services and WPM refer to the two U.S. Auto defendants collectively. Neither Westlake entity was part of the relationship between U.S. Auto and Plaintiffs, which means neither Westlake entity knows the precise U.S. Auto entity that took the alleged actions at issue in the Amended Complaint.

consumers would have been left without the ability to easily manage their auto loans, pay outstanding balances, or benefit from other services—like receiving the car title after the loan is satisfied. WPM stepped into that void at the request of the entities who own the underlying auto loans. By agreeing to service the underlying loans, however, WPM did not insert itself into the relationship between Plaintiffs and U.S. Auto. WPM did not become party to any contract between the two, did not assume contractual obligations to Plaintiffs related to the VSCs, and certainly did not inherit some corpus of funds that U.S. Auto allegedly owes to Plaintiff. WPM simply agreed to service auto loans that lacked a servicer, thereby filling a need for consumers. Indeed, as the new servicer, WPM was forced to bring in a new third-party company to administer VSCs consumers purchased. Am. Compl. ¶ 214.

Plaintiffs have no relationship with Westlake Services or WPM; and certainly no claim against either entity. Nonetheless, Plaintiffs allege five claims against the Westlake entities—unjust enrichment, third-party beneficiary, constructive trust, declaratory judgment, and interference with prospective economic advantage—in a flailing attempt to pass the risk of Plaintiffs' interactions with a now bankrupt U.S. Auto to some other entity. None of Plaintiffs' claims against the Westlake entities has any merit. Plaintiffs cannot hold the Westlake entities liable for funds they do not have, related to contracts they are not a part of, based on conduct they did not commit. The Court should dismiss Westlake Services and WPM with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiffs sell and administer automotive VSCs, which they refer to in the Amended Complaint as "DOWC Product(s)." As is relevant to the Amended Complaint, they sell these products through dealerships by way of Administration and Provider Agreements. Am. Compl. at ¶¶ 24-25. On September 1, 2017, Plaintiffs and Defendant U.S. Auto entered into a Provider Agreement and an Administration Agreement for the sale of DOWC Products. *Id.* at ¶¶ 28-29. Under the Provider Agreement, U.S. Auto appointed Plaintiffs as its exclusive provider of DOWC Products to consumers. *Id.* at ¶ 28. Under the Administration Agreement, U.S. Auto agreed to be the obligor for all DOWC Products sold (*i.e.*, responsible for funding claims for repairs or refunds) and engaged Plaintiffs to exclusively administer DOWC Products that consumers purchased. *Id.* at ¶¶ 31-32.

When a consumer purchased a DOWC Product from U.S. Auto and financed the purchase of a vehicle, U.S. Auto would include the premium for the DOWC Product in the amount financed in the resulting retail installment sales contract ("RISC"). *Id.* at ¶ 1. U.S. Auto was then to advance the full premium due to Plaintiffs. *Id.* at ¶¶ 40, 43, 47. Under this arrangement, Plaintiffs would be paid in

---

[2] The "facts" in this section come from Plaintiffs' Amended Complaint. Westlake Services and WPM assume the truth of Plaintiffs' allegations for purposes of this Motion only. Westlake Services and WPM have limited insight into many of the supposed facts because neither defendant was involved in this history between Plaintiffs and most of the other defendants.

full and U.S. Auto would carry the risk of non-payment in the event a consumer defaulted on the RISC. *Id.* at ¶¶ 40, 43. Under the October 2020 amendment to Plaintiffs' and U.S. Auto's Administration and Provider Agreements, a portion of the premiums for DOWC Products was to be paid to Plaintiffs as an administration fee and a portion set aside as a reserve for future claims (although the Amended Complaint provides little detail regarding this alleged arrangement and does not attach any of the relevant contracts). *Id.* Plaintiffs would invoice U.S. Auto for these amounts monthly and U.S. Auto was to pay the full amount due each month. *Id.* at ¶¶ 44-46. Under Plaintiffs' and U.S. Auto's agreements, sold DOWC Products would allegedly not be "in force" or "otherwise activated or valid" if U.S. Auto failed to remit premiums and administrative fees. *Id.* at ¶ 47.

Beginning in September 2021, U.S. Auto allegedly underpaid Plaintiffs' monthly invoices and therefore, according to Plaintiffs, any DOWC Products for which premiums were not paid to Plaintiffs were not in effect. *Id.* at ¶¶ 52, 55. In the fourth quarter of 2021, Plaintiffs allegedly communicated to U.S. Auto that the account needed to be brought current, and Plaintiffs were informed that U.S. Auto was allegedly going through a round of account sales to ensure payment to Plaintiffs. *Id.* at ¶¶ 62-63. Plaintiffs allege upon information and belief that these sales are evidenced by a Pooling and Servicing Agreement. *Id.* at ¶ 73.

In the summer of 2022, U.S. Auto's CEO allegedly stated that weekly payments to Plaintiffs would resume to reduce the balance owed, and he was aware that the unpaid DOWC Products were not in force or effect. *Id*. at ¶¶ 78-80. In early 2023, U.S. Auto was allegedly still delinquent, and Plaintiffs demanded that the account be brought current. *Id*. at ¶ 84. Plaintiffs and U.S. Auto engaged in multiple discussion, and on April 28, 2023, U.S. Auto represented that it was allegedly working on a solution to pay Plaintiffs. *Id*. at ¶ 93. Allegedly unbeknownst to Plaintiffs, however, Milestone directed U.S. Auto to cease operations on April 24, 2023. *Id*. at ¶ 95. U.S. Auto allegedly did not respond to communications from Plaintiffs in May and June 2023. *Id*. at ¶ 96.

In June 2023, Plaintiffs learned that WPM took over the servicing of U.S. Auto's loans. *Id*. at ¶ 97. Plaintiffs allege that they contacted Westlake Services and WPM to inform them of the balance due for the sold DOWC Products and requesting payment. *Id.* at ¶¶ 97-98. Plaintiffs also allegedly reiterated that DOWC Products for which premiums remain unpaid are not "in force." *Id*. at ¶ 100.

On July 11, 2023, Westlake announced it was retaining a third party warranty company to take over administration of some of U.S. Auto's extended warranty products. *Id.* at ¶ 214.

Plaintiffs filed their complaint on July 24, 2023. *See* ECF No. 1. Shortly thereafter, Defendants U.S. Auto Finance, Inc. and U.S. Auto Sales, Inc. filed for

Chapter 7 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware. ECF No. 9. Plaintiffs filed the operative Amended Complaint on September 27, 2023. ECF No. 10.

## LEGAL STANDARD

A Rule 12(b)(6) motion "tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Th[is] plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (*quoting Twombly*, 550 U.S. at 556). In reviewing a motion to dismiss, the Court accepts all factual allegations in the complaint as true, but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

To determine whether a complaint is sufficient under Rule 12(b)(6), the Third Circuit applies a three-part test:

> (1) the court must first recite the elements that must be pled in order to state a claim; (2) the court must then determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) the court must assume the veracity of well-pleaded factual allegations and ascertain whether they plausibly give rise to a right to relief.

*Miles v. National Football League*, 641 F.Supp.3d 91, 96 (D. N.J. 2022) (citing

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

## **ARGUMENT**

### I.    **Plaintiffs' Claim Against Westlake Services Amounts to Impermissible Group Pleadings.**

Westlake Services should be dismissed from this action entirely because

Plaintiffs fail to allege any specific facts whatsoever against Westlake Services.

Instead, throughout the Amended Complaint, Plaintiff refers to "Westlake and/or

Westlake Portfolio Management" interchangeably.

A complaint must "specify which defendants performed which acts." *Zuniga*

*v. Am. Home Mortg.*, Civ. No. 14-2973, 2016 U.S. Dist. LEXIS 29637, at *9 (D.N.J.

Mar. 7, 2016). In *D'Urso v. Bamco, Inc.*, the plaintiff named companies Baron

Capital Management, Inc. and Baron Capital Group, Inc. as defendants, jointly

defining them as "Baron" or "Defendants." *D'Urso*, Civil Action No. 22-03723

(GC) (RLS), 2023 U.S. Dist. LEXIS 154127, at *7 n.6 (D.N.J. Aug. 31, 2023). The

plaintiff referred to these two defendants collectively throughout the complaint, and

the only specific allegation as to either entity was in the "parties" section of the

complaint. *Id.* The court dismissed both defendants, finding that the "[p]laintiffs'

inclusion of BCM and BCG thus constitutes an impermissible group pleading." *Id.*

(citing *United States ex rel. Bennett v. Bayer Corp.*, Civ. No. 17-4188, 2022 U.S.

Dist. LEXIS 59793, at *20 (D.N.J. Mar. 31, 2022) (finding allegations that fail to distinguish between distinct defendants amount to impermissible group pleading)).

Here, Plaintiffs do not assert a single allegation specific to Westlake Services. Even in the "Parties" section of the Complaint, Plaintiffs refer to both Westlake Services and WPM collectively. Am. Compl. ¶ 15. In fact, Plaintiffs' only specific allegation against either Westlake entity relates to *WPM*: "In June 2023, DOWC learned that Westlake Portfolio Management had taken over the servicing of the USA Sales loans." *Id.* at ¶ 97. Despite expressly alleging that WPM took over servicing for U.S. Auto, Plaintiffs inexplicably included Westlake Services as a defendant.

Plaintiffs' failure to distinguish between Westlake Services and WPM, and the lack of even a *single* factual allegation as to Westlake Services, constitutes impermissible group pleading. Therefore, Westlake Services should be dismissed from this action entirely.

## II.    Count VIII: Plaintiffs Fail to State a Claim for Unjust Enrichment Against WPM.

Plaintiffs' first claim against any Westlake entity is Count VIII of the Amended Complaint.  In that claim, Plaintiffs allege that WPM is being unjustly enriched by collecting monthly payments from consumers on the balance of their RISCs where the amount financed includes the premiums for DOWC Products that U.S. Auto allegedly failed to pay to Plaintiffs. Plaintiffs' claim fails for three

reasons. First, any alleged benefit Plaintiffs conferred was conferred onto U.S. Auto, *not* WPM. Second, Plaintiffs cannot establish any direct relationship between Plaintiffs and WPM. Third, Plaintiffs cannot pursue a claim for unjust enrichment against WPM based on U.S. Auto's alleged conduct.

    A.    *Any Benefit Plaintiffs Conferred was Conferred on U.S. Auto, Not WPM.*

Under New Jersey law, a claim for unjust enrichment has two basic elements. "A plaintiff must demonstrate both that defendant received a benefit and that retention of that benefit without payment would be unjust." *Bethea v. Roizman*, Civil No. 11-254 (JBS/JS), 2012 U.S. Dist. LEXIS 139164, at *22-23 (D.N.J. Sept. 27, 2023) (*quoting MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 733 (D.N.J. 2008)). Additionally, where the plaintiff fails to allege that the benefit at issue was conferred on the defendant, as opposed to some other party, the claim for unjust enrichment fails as a matter of law. *Sharma v. Gupta*, Civil Action No. 20-3446 (MAS) (DEA), 2022 U.S. Dist. LEXIS 60972, at *2 (D.N.J. Mar. 31, 2022); *Debjo Sales, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, No. 14-4657, 2015 U.S. Dist. LEXIS 56504, 2015 WL 1969380, at *9 (D.N.J. Apr. 29, 2015) ("[The] [p]laintiff may be injured here, but there is no doubt that, as pled, [p]laintiff does not confer any benefit on [d]efendant.").

For example, in *Sharma v. Gupta*, the plaintiff and others established a corporate entity – Sage Group. 2022 U.S. Dist. LEXIS 60972, at *2. The defendants

allegedly hatched a scheme to deprive Sage Group of one of its core assets. Specifically, the defendants allegedly lied to plaintiff regarding the profitability of one of its divisions, inducing plaintiff to sell that division to a company named Caldwell Investments. *Id.* at *3. Caldwell then sold the division to ProSoft, a company one of the defendants' brothers owned. Among other claims, the plaintiff asserted a claim for unjust enrichment against ProSoft. The court granted ProSoft's motion to dismiss this claim because "Sage did not expect remuneration from ProSoft. The Amended Complaint alleges that Sage sold the Division to Caldwell, not ProSoft. Indeed, at the time Sage parted with the Division, neither it nor [plaintiff] could have known that the Division would ultimately end up with ProSoft." *Id.* at *17.

Here, the situation is similar. The Amended Complaint alleges that Plaintiffs conferred a benefit on U.S. Auto and/or the consumers who purchased DOWC Products from Plaintiffs. Am. Compl. ¶¶ 35-36. There is no allegation that *WPM* received any benefit from Plaintiffs. In fact, as the Amended Complaint suggests, Plaintiffs are no longer providing administration services for the unpaid DOWC Products financed through the RISCs because they are not "in effect." *See id.* at ¶¶ 55, 100). Plaintiffs' further allege that WPM has engaged a different third party administrator, Am. Compl. ¶ 214—an action that could only have *cost* WPM money. While Plaintiffs do allege that U.S. Auto purportedly collected funds at the time of

sale of a DOWC Product and failed to advance those funds to Plaintiffs, Plaintiffs fail to allege that U.S. Auto paid or transferred any such funds to WPM. And finally, as in *Sharma*, at the time Plaintiffs permitted U.S. Auto to sell DOWC Products, there was no way Plaintiffs could have known WPM would ever be brought in to the role of servicer.

Because Plaintiffs do not allege that they have conferred any benefit on WPM, their claim for unjust enrichment fails.

### B.    There is No Direct Relationship Between Plaintiffs and WPM.

Plaintiffs' claim also fails because they have not, and cannot, allege that any direct relationship exists between Plaintiffs and WPM.

Courts have found that when there is no direct relationship between the parties, an unjust enrichment claim cannot stand. "[N]umerous courts have concluded that New Jersey requires some relationship between the parties when alleging unjust enrichment." *Sharma*, 2022 U.S. Dist. LEXIS 60972, at *18 (*citing Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 506 (D.N.J. 2009) (listing cases) ("New Jersey law requires a direct relationship between the parties.").

Here, the Amended Complaint does not allege any direct relationship between Plaintiffs and WPM. At most, Plaintiffs allege that they learned of WPM's involvement only after WPM took over servicing from U.S. Auto. Am. Compl. ¶ 97.

In the absence of any direct relationship between Plaintiffs and WPM, the claim for unjust enrichment must be dismissed.

> C. *Plaintiffs Cannot Assert an Unjust Enrichment Claim Against WPM Based on U.S. Auto's Alleged Conduct.*

Finally, to the extent Plaintiffs seek to recover from WPM for the benefits Plaintiffs conferred on U.S. Auto under the Administration and Provider Agreements, Plaintiffs' attempt to use a claim for unjust enrichment to put WPM into U.S. Auto's shoes is improper.

First, multiple courts have held that "a plaintiff is not entitled to use the legal fiction of quasi-contract to substitute one promisor or debtor for another." *Coastal Group, Inc. v. Westholme Partners*, Civil No. 94-3010, 1998 U.S. Dist. LEXIS 23740, at *64 (D.N.J. Dec. 16, 1998). The *Insulation Contracting & Supply v. Kravco, Inc.*, 209 N.J. Super. 367, 377 (App. Div. 1986) case demonstrates this concept. The plaintiff subcontractor attempted to recover against the owner of the property and others, alleging they received an unjust benefit from work the plaintiff subcontractor performed. *Id.* The appellate court affirmed summary judgment in defendants' favor on plaintiff's unjust enrichment claim because plaintiff was already under an obligation to perform under a contract with a different contractor. *Id.*

Here, Plaintiffs seek to recover for their alleged performance under the Administration and Provider Agreements, to which U.S. Auto is a party, *not* WPM.

Under those Agreements, U.S. Auto was to pay Plaintiffs the premiums due for the DOWC Products at the time they were sold. *See, e.g.*, Am. Compl. ¶ 47,.  Plaintiffs cannot now use a quasi-contract theory of unjust enrichment to "swap" obligors and hold WPM liable for U.S. Auto's alleged breach of the Administration and Provider Agreements.

Second, to the extent Plaintiffs attempt to argue that WPM is a successor to U.S. Auto that can be held liable for any alleged wrongs U.S. Auto committed, even if such a claim were permitted, it would fail because Plaintiffs' alleged damages are coexistent with their alleged damages for breach of contract. *Compare* Am. Compl. ¶¶ 111 and 116 (alleging damages for breach of contract totaling $17,891,519.00) *with* ¶ 173 (alleging damages for unjust enrichment totaling $17,891,519.00).  To establish unjust enrichment, "a plaintiff [must] show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant *beyond its contractual rights*." *VRG Corp. v. GKN Realty Corp*., 135 N.J. 539, 554, 641 A.2d 519 (1994)(emphasis added).

As evidenced by the fact that Plaintiffs allege the *same* damages for their breach of contract claims against U.S. Auto and their unjust enrichment claim against all defendants, it is clear that U.S. Auto was not allegedly enriched beyond its alleged contractual rights.

Therefore, Plaintiffs' claim for unjust enrichment against WPM based on U.S. Auto's alleged conduct fails as a matter of law.

### D. Plaintiffs Cannot Recover Attorneys' Fees Pursuant to a Claim for Unjust Enrichment.

To the extent Plaintiffs plead an entitlement to attorneys' fees in connection with their unjust enrichment claim, that request is independently subject to dismissal. Under New Jersey law, "a prevailing party can [only] recover [attorneys'] fees if they are expressly provided for by statute, court rule, or contract." *Packard-Bamberger & Co. v. Collier*, 167 N.J. 427, 440, 771 A.2d 1194 (2001). Plaintiffs do not identify any statute or court rule that would provide for recovery of fees for unjust enrichment. And while Plaintiffs allege they are a third party beneficiary to the RISCs that WPM services, Plaintiffs identify no provision in any RISC or any other agreement (such as the Administration and Provider Agreements between Plaintiffs and U.S. Auto or the consumer contracts for the DOWC Products) that would provide for recovery of fees. The claim for recovery of attorneys' fees in connection with Plaintiffs' unjust enrichment should be dismissed with prejudice.

## III. Count X: Plaintiffs Fail to State a Claim for Constructive Trust Against WPM.

In Count X, Plaintiffs allege that, due to the defendants' (including WPM) alleged failure to pay Plaintiffs, the Court should Order that WPM place all funds collected into a constructive trust until the full $17 million that U.S. Auto allegedly

owes Plaintiffs is paid. *See* Am. Compl., Count X. Plaintiffs' claim for a constructive trust fails, however, because this is an equitable remedy, not a standalone claim. Moreover, Plaintiffs cannot show that WPM committed a wrongful act that caused unjust enrichment. Finally, Plaintiffs' requests for recovery of attorneys' fees and punitive damages are independently subject to dismissal because that relief is not recoverable under New Jersey law.

A.    *A Constructive Trust is an Equitable Remedy Not a Standalone Claim.*

"It is well established that '[a] constructive trust is an equitable remedy and not an independent cause of action.'" *Balanced Bridge Funding LLC v. Mitnick Law Off., LLC*, Civil No. 21-20512, 2022 U.S. Dist. LEXIS 151426, at *6 (D.N.J. Aug. 23, 2022) (*quoting Van Horn, Metz & Co. v. Crisafulli*, No. 21-01128, 2021 U.S. Dist. LEXIS 182039, at *15 (D.N.J. Sept. 23, 2021); *see also Flanigan v. Munson*, 175 N.J. 597, 818 A.2d 1275 (2003)); *Angera v. Angera*, No. 14-01253, 2014 U.S. Dist. LEXIS 142207, at *7 n.5 (D.N.J. Oct. 6, 2014); *Cap. Inv. Funding, LLC v. Lancaster Res., Inc.*, No. 8-4714, 2014 U.S. Dist. LEXIS 157711, at *5 (D.N.J. Nov. 6, 2014) ("A constructive trust is an equitable remedy and not a cause of action in and of itself.")

Because Plaintiffs' claim for a constructive trust impermissibly asserts a remedy as a standalone claim, the Court should dismiss this "claim" with prejudice. *Balanced Bridge*, 2022 U.S. Dist. LEXIS 151426, at *6 (citing *Chen v. Cline*, No.

12-3051, 2013 U.S. Dist. LEXIS 26741, at *17 (D.N.J. Feb. 27, 2013) ("Because constructive trust is a remedy and not an independent cause of action, Count Four is dismissed.")).

    B.    *Plaintiffs' Fail to Satisfy the Elements Required for the Imposition of a Constructive Trust.*

"A constructive trust is a measure through which a court of equity can prevent unjust enrichment and compel a restoration of property to a plaintiff that 'in good conscience does not belong to the defendant.'" *In re Allen*, Case No. 11-37671, 2012 Bankr. LEXIS 874, at *43 (Bankr. D.N.J. Mar. 2, 2012) (*quoting Flanigan v. Munson*, 175 N.J. 597, 818 A.2d 1275 (2002)), *rev'd on other grounds,* 768 F.3d 274 (3d Cir. 2014). Courts in New Jersey have traditionally applied a two-part test to determine whether a constructive trust is an appropriate equitable remedy. This test requires proof of (1) a wrongful act, which (2) resulted in an unjust enrichment. *Flanigan*, 175 N.J. 597 at 608 (*citing D'Ippolito v. Castoro*, 51 N.J. 584, 589, 242 A.2d 617 (1968)).

The first element, a wrongful act, is "usually, though not limited to, fraud, mistake, undue influence, or breach of a confidential relationship, which has resulted in a transfer of property." *D'Ippolito*, 51 N.J. at 589. "[B]reach of contract alone is not sufficient and does not qualify as the type of wrongful act or fraud which would warrant imposition of a constructive trust." *Presten v. Sailer*, 225 N.J. Super. 178, 195, 542 A.2d 7 (App. Div. 1988).

Here, the Amended Complaint is devoid of any facts plausibly demonstrating that WPM (as opposed to U.S. Auto) committed fraud, mistake, or a breach of a confidential relationship between WPM and Plaintiffs. Moreover, Plaintiffs' Amended Complaint seeks identical damages for their claims for U.S. Auto's alleged breach of the Administration and Provider Agreements and their tort claims. It is clear that Plaintiffs' claim for constructive trust is premised on U.S. Auto's alleged breach of contract.

The second element is that the wrongful act must have resulted in unjust enrichment. *In re: Allen*, 2012 Bankr. LEXIS 874, at *46 (*citing D'Ippolito*, 51 N.J. at 588). The Third Circuit has explained that the purpose of the equitable remedy of a constructive trust is "to restore the plaintiff property of which he has been unjustly deprived and to take from the defendant property the retention of which by him would result in a corresponding unjust enrichment of the defendant." *Skretvedt v. E.I. Dupont de Nemours*, 372 F.3d 193, 213 (3d Cir. 2004) (internal citations omitted). Thus, the touchstone of the constructive trust doctrine is unjust enrichment. *In re: Allen*, 2012 Bankr. LEXIS 874, at *47 (*citing First Interregional Advisors Corp. v. Golding*, 218 B.R. 722, 723 (Bankr. D.N.J. 1997)).

If a plaintiff's claim for unjust enrichment fails, courts also dismiss the related claim for a constructive trust. *Sharma*, 2022 U.S. Dist. LEXIS 60972, at *18 n.6 ("Because the Court dismisses the Amended Complaint's unjust enrichment claim,

it also dismisses the remedies of constructive trust and declaratory relief derived therefrom."); *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 772 (Bankr. D.N.J. 2013) ("Although Plaintiff is likely to satisfy the wrongful act element, his constructive trust claim must fail because he cannot sufficiently establish the prerequisite of unjust enrichment. The Court, in fact, already dismissed Plaintiff's unjust enrichment claim"). Here, for all the reasons set forth above in Section II, Plaintiffs also fail to satisfy the second element of unjust enrichment.

In summary, Plaintiffs fail to satisfy either of the necessary elements to show that the imposition of a constructive trust is warranted.

C.    *Punitive Damages and Attorneys' Fees are Not Recoverable in Connection with a Constructive Trust.*

Finally, even if Plaintiffs' claim for a constructive trust survives dismissal, punitive damages and attorneys' fees are not recoverable. As a result, the Court should dismiss Plaintiffs' request for those forms of relief.

A constructive trust is, in itself, an equitable remedy for a claim of unjust enrichment that does not carry with it any entitlement to damages, including punitive damages, particularly if the underlying unjust enrichment claim fails. *See Sharma*, 2022 U.S. Dist. LEXIS 60972, at *18 n.6 ("Because the Court dismisses the Amended Complaint's unjust enrichment claim, it also dismisses the remedies of constructive trust and declaratory relief derived therefrom."); *see also Thieme v. Aucoin-Thieme*, 227 N.J. 269, 288 (N.J. 2016)("In the event that a court finds unjust

enrichment, it may impose a constructive trust. That remedy has been described as 'the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.'").

Moreover, with respect to attorneys' fees, again, absent an express right to recovery under statute, court rule, or contract – none of which have been identified in the Amended Complaint – attorneys' fees are not recoverable. *Collier*, 167 N.J. at 440.

## IV.  Count IX: The Court Should Dismiss Plaintiffs' Claim for Third Party Beneficiary Breach of Contract

### A.  *Plaintiffs fail to Allege that any Westlake Entity is a Party to Any Relevant Contract.*

In Count IX, Plaintiffs assert a claim for breach of consumers' RISCs that WPM is currently servicing. Am. Compl., Count IX. Plaintiffs allege that U.S. Auto and the consumers who financed the purchase of vehicles and DOWC Products are parties to the RISCs, and that Plaintiffs are intended third party beneficiaries of those contracts.[3] *Id.* at ¶ 178. Although WPM has been engaged to service the RISCs, *id.*

---

[3] WPM does not concede that Plaintiffs are, in fact, third party beneficiaries of consumers' RISCs, as Plaintiffs allege in Count IX. In fact, Westlake suspects that Plaintiffs may have disclaimed any and all interest in the RISCs in the Administration and/or Provider Agreements with U.S. Auto, as they have in other similar arrangements. For example, in *SING for Serv., LLC v. DOWC Admin. Servs.,*

at ¶ 175, Plaintiffs fail to allege that WPM is *a party* to the RISCs—through assignment or otherwise.

"[I]t is axiomatic that one cannot breach a contract he is not a party to." *Kamdem-Ouaffo v. Task Mgmt.*, No. 1:17-cv-75062018 U.S. Dist. LEXIS 113899, at *51 (D.N.J. July 9, 2018); *see also Demorato v. Carver Boat Corps.*, Civ. Act. No. 06-240, 2007 U.S. Dist. LEXIS 35758, at *11(D.N.J. May 16, 2007) ("The Court will also grant summary judgment to Carver on Plaintiffs' breach of contract claim. Carver was not a party to the contract for the sale of the boat.").

Nowhere in the 216 paragraph Amended Complaint do Plaintiffs allege that any RISC was assigned to WPM or otherwise allege that WPM is a party to the RISCs. In the absence of any such allegation, the third-party beneficiary claim against WPM cannot survive.

---

*LLC*, 2022 U.S. Dist. LEXIS 771, at *51 (S.D.N.Y. Jan. 3, 2022), DOWC sought to cancel consumer payment plans for its warranty and insurance products sold and/or financed by the defendants. Among other findings, the court found that DOWC lacked standing to do so because it had no interest in the payment plans. Specifically, the court noted that in the Administrator Agreement, "DOWC explicitly 'acknowledge[d] and agree[d] that title to all Accounts (including all Payment Plan Agreements related thereto and all amounts owing by a Purchaser pursuant to any Payment Plan Agreement ) shall at all times be vested in [Mepco] and its assignees, and neither Administrator, Insurer, nor the Seller shall have any right, title or interest therein." *Id.* at *51. Similarly, the consumer contract for the DOWC Product may also contain an integration clause that disclaims the existence of any other agreements that apply to the Product, including payment of the premium due. *Id.* at *6. However, Plaintiffs failed to attach the Administration and Provider Agreements or the DOWC Product agreement to their Amended Complaint.

    B.    *Plaintiffs' Claim for Attorneys' Fees for Third Party Beneficiary Breach of Contract Should be Dismissed.*

Plaintiffs include a request for recovery of attorneys' fees in connection with their claim for third party beneficiary breach of contract. Am. Compl., Count IX. Plaintiffs fail to allege the basis for recovery of attorneys' fees in the Amended Complaint, and therefore, the request should be dismissed.

As discussed above, "New Jersey generally disfavors the shifting of attorneys' fees" unless recovery of fees is "expressly provided for by statute, court rule, or contract." *Collier*, 167 N.J. at 440. The only available basis for recovery of fees for this claim is pursuant to contract. Where the plaintiff fails to identify the contractual provision (or to produce the contract) that allows for recovery of fees, the request for attorneys' fees in connection with a claim for breach of contract is subject to dismissal. *Alpine East Elec., LLC v. Modern Grp., Ltd.*, 2018 U.S. Dist. LEXIS 114492, at *3 (D.N.J. Mar. 19, 2018) (granting motion to dismiss plaintiff's request for attorneys' fees where plaintiff failed to identify the contractual provision providing for recovery of fees).

Here, Plaintiffs make no attempt to identify the contractual provision pursuant to which they seek to recover attorneys' fees. Plaintiffs did not attach any contracts to either the original Complaint or the Amended Complaint. *See* Dkt. Nos. 1, 10. Plaintiffs also fail identify which contract(s) allegedly contain an attorneys' fee

provision and/or how the supposed provisions impact WPM. Therefore, Plaintiffs' request for attorneys' fees in Count IX should be dismissed.

## V.    Count XI: Plaintiffs Fail to State a Claim for a Declaratory Judgment

In Count XI, Plaintiffs seek a declaratory judgment. Plaintiffs allege that they are an intended third party beneficiary of the RISCs that financed the premium for the DOWC Products that consumers purchased. Am. Compl. ¶ 193. Plaintiffs allege that each RISC contained a federal Truth in Lending Act ("TILA") disclosure itemizing the amount of the premium to be paid to Plaintiffs. *Id.* at ¶ 194. Plaintiffs further allege that because U.S. Auto has not paid the premium to Plaintiffs, the TILA disclosures on the RISCs are defective, which invalidates the entire RISC. *Id.* at ¶ 199. Finally, Plaintiffs allege that, to the extent the RISCs have been securitized, the investors that hold interests in the securitized trusts have the right to require those alleged defects be cured. *Id.* at ¶¶ 198-199, 204-205. Based on these allegations, Plaintiffs ask the Court to enter a judgment declaring that Plaintiffs have not been paid as required, that Plaintiffs are third party beneficiaries of the RISCs that financed the premiums for DOWC Products, and that the investors in the securitized trusts must exercise their right to require U.S. Auto and WPM to cure the defective RISCs by remitting payment to Plaintiffs. *Id.* at ¶ 206. Plaintiffs also seek recovery of attorneys' fees and punitive damages in connection with this claim. *Id.* at Count XI.

-22-

Plaintiffs' claim fails because it is procedurally moot, Plaintiffs lack standing to enforce any securitization agreement, and there is no basis for recovery of attorneys' fees or punitive damages for a claim sounding in contract.

A.    *Plaintiffs' Claim is Moot Because There is No Uncertainty Regarding the Parties' Rights and Plaintiffs' Alleged Damages Have Already Accrued.*

As an initial matter, Plaintiffs' declaratory judgment claim is subject to dismissal because Plaintiffs allege that U.S. Auto has *already* breached the RISCs (and did so at origination when the financed premiums were allegedly not paid as disclosed). "The [Declaratory Judgment] Act's purpose is to avoid accrual of avoidable damages, afford an early adjudication, declare rights before damages accrue, and 'clarify legal relationships before they have been disturbed or a party's rights violated.'" *Lento v. Altman*, Civil No. 22-4840 (RBK/EAP), 2023 U.S. Dist. LEXIS 111221, at *55 (D.N.J. June 27, 2023) (*quoting Travelers Ins. Co. v. Davis*, 490 F.2d 536, 543 (3d Cir. 1974)). Where the plaintiff alleges that a breach of contract has already occurred and damages have already accrued, then a declaratory judgment "would serve no legitimate purpose." *Id.*

Here, because Plaintiffs allege that U.S. Auto already failed to advance the premiums to Plaintiffs at the time the DOWC Products were sold, the alleged breach already occurred and any alleged damages have already accrued. The Court should dismiss the declaratory judgment count for this reason alone.

B.      *Plaintiffs Lack Standing to Compel the Investors or Owners of a Securitized Trust to Act.*

Plaintiffs allege that the RISCs were securitized, and the owners or investors in the securitization trusts presumably have the right to compel U.S. Auto (and WPM) to cure the alleged defects in the RISCs by paying to Plaintiffs the amount Plaintiffs are allegedly owed for the DOWC Products. Plaintiffs lack standing to enforce any provisions of any securitization agreement.

Courts routinely hold that parties to (or beneficiaries of) an underlying debt agreement, like the RISCs here, lack standing to challenge or enforce any securitization agreement after the debt is securitized. *See, e.g., Kayser v. Ocwen Loan Servicing, LLC*, Civ. No. 13-5999 (KM), 2017 U.S. Dist. LEXIS 132560, at *18-19 (D.N.J. Dec. 28,2015) (affirming bankruptcy court's dismissal of borrower's claims for breach of contract based on defendants' breach of a pooling and servicing agreement); *In re Walker*, 466 B.R. 271, 285 (Bankr. E.D. Pa. 2012) ("[I]t appears that a judicial consensus has developed holding that a borrower lacks standing to (1) challenge the validity of a mortgage securitization or (2) request a judicial determination that a loan assignment is invalid due to noncompliance with a pooling and servicing agreement, when the borrower is neither a party to nor a third party beneficiary of the securitization agreement.").

Here, even assuming *arguendo* that Plaintiffs are both third party beneficiaries of a consumer's RISC and have the right to compel U.S. Auto to pay the funds U.S.

Auto allegedly owed at origination for the DOWC Products, Plaintiffs fail to allege any facts or identify any contractual provisions that would support their claim that a consumer or anyone else has the right to enforce any unrelated securitization or purchase and sale agreement. Neither the consumers nor Plaintiffs are parties to those agreements, and under well-settled law, they lack standing to enforce any provisions of those agreements. Plaintiffs claim for declaratory judgment should be dismissed for this reason as well.

C.    *Plaintiffs' Claims for Attorneys' Fees and Punitive Damages Should be Dismissed Because Such Damages are Not Recoverable for Claims Based in Contract.*

Even if the Court does not dismiss this claim in its entirety (it should), Plaintiffs' request for punitive damages and attorneys' fees related to this claim cannot survive because it is premised on a breach of contract theory. Punitive damages are not available for claims for breach of contract. *Jayme v. MCI Corp*, 328 Fed. Appx. 768, 771 (3d Cir. 2008) ("Under New Jersey law, punitive damages for breach of contract generally are not recoverable"). Similarly, as discussed above, Plaintiffs identify no contractual provision in the RISC (or any other contract) that provides for the recovery of attorneys' fees as to WPM. *Collier*, 167 N.J. at 440.

## VI.  Count XII: Plaintiffs Fail to State a Claim for Interference with Prospective Economic Advantage.

The final claim against WPM—Count XII—is one for interference with prospective economic advantage. This is the only claim Plaintiffs assert solely

against WPM. Plaintiffs allege that, under its agreements with U.S. Auto, it is the exclusive administrator of DOWC Products U.S. Auto sold. Am. Compl. ¶ 209. Plaintiffs also allege that they have a reasonable expectation of payment for these DOWC Products. *Id.* at 213. However, Plaintiffs allege that on July 11, 2023, the Chief Operating Officer of WPM announced that "a third party warranty company will take over some of the USA extended warranties." *Id.* at ¶ 214. In Count XII, Plaintiffs claim that by engaging a third party company to administer the DOWC Products and by not paying to Plaintiffs the premiums for the DOWC Products, WPM is interfering with Plaintiffs' prospective economic advantage.

Under New Jersey law, to prove a claim of tortious interference with prospective economic advantage, a plaintiff must show that it had a reasonable expectation of economic advantage that was lost as a direct result of defendant's malicious interference, and that it suffered losses as a result. *Interstate Realty Co., L.L.C. v. Sears, Roebuck & Co.*, Civ. No. 06-5997 (DRD), 2009 U.S. Dist. LEXIS 35141, at *24-25 (D.N.J. Apr. 27, 2009) (*quoting Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 305-06, 770 A.2d 1158 (2001)). In other words, Plaintiffs must allege facts sufficient to establish four elements: (1) Plaintiffs had a prospective economic or contractual relationship; (2) WPM maliciously interfered with that relationship; (3) the interference caused the loss of the prospective economic gain; and (4) Plaintiffs were damaged as a result. *Id.* (citing *MacDougall v. Weichert*, 144 N.J.

380, 404, 677 A.2d 162 (1996) and *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 751-52 (1989)).

The Court should dismiss this claim because Plaintiffs fail to allege facts in support of the elements of malice (element 2) and causation (element 4). Similarly, there is no basis to recover attorneys' fees.

### A.   Plaintiffs Fail to Allege WPM Acted with Malice.

The Amended Complaint utterly fails to establish that WPM acted with malice in allegedly engaging a new third party administrator for the DOWC Products. The second element—malice—does not mean ill will but, rather, means "that harm was inflicted intentionally and without justification or excuse." *Lamorte Burns*, 167 N.J. at 306 (*quoting Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc*., 282 N.J. Super. 140, 199, 659 A.2d 904 (App. Div. 1995)). To be malicious, "[t]he conduct must be both 'injurious and transgressive of generally accepted standards of common morality or of law." *Interstate Realty*, 2009 U.S. Dist. LEXIS 35141 at *25-26. "The line is clearly drawn at conduct that is fraudulent, dishonest, or illegal," and even "[c]onduct spurred by spite and ill-will is not necessarily sufficient to rise to the level of 'malice.'" *Id.* at *26.

Here, Plaintiffs fail to allege, even in a conclusory fashion, that WPM acted with malice. In the absence of any such allegations, Plaintiffs' claim must be dismissed.

B.    *Plaintiffs Fail to Allege Facts Sufficient to Establish Causation.*

Similarly, the third element requires a plaintiff to demonstrate "that if there had been no interference there was a reasonable probability that the victim of the interference would have received the anticipated economic benefit." *Interstate Realty*, 2009 U.S. Dist. LEXIS 35141 at \*25 (*quoting Ideal Dairy Farms*, 282 N.J. Super. at 199).

Here, Plaintiffs allege that U.S. Auto allegedly breached the Provider and Administration Agreements with Plaintiffs years before WPM even became involved as servicer of the U.S. Auto accounts. Am. Compl. ¶¶ 52, 76, 79, 84. Plaintiffs also allege that U.S. Auto ceased doing business several months before WPM announced it would engage a third party administrator for vehicle warranty products, *id.* at ¶¶ 95, 97. Moreover, Plaintiffs allege that they were not supporting the unpaid DOWC Products because they were not "in effect" due to the non-payment of the premiums at the time of sale. Am. Compl. ¶¶ 55, 100. These allegations do not show that, but for *WPM's* conduct, Plaintiffs had a reasonable probability of being paid and receiving the anticipated economic benefit. To the contrary, the cause of Plaintiffs' alleged losses was U.S. Auto alleged failure to pay Plaintiffs at the time it sold the DOWC Products.

Therefore, Plaintiffs' claim for interference with prospective economic advantage fails as a matter of law.

C.    *Attorneys' Fees are Not Recoverable.*

Finally, as with Plaintiffs' other claims, the attempt to recover attorneys' fees for its interference with prospective economic advantage claim lacks merit. This claim is a "a typical common law tort [claim] and not a statutory cause of action in which attorneys' fees are expressly authorized." *Penn v. Wal-Mart Stores, Inc.*, 116 F. Supp. 2d 557, 569 (D.N.J. 2000). Accordingly, even if Plaintiffs' claim survives dismissal, their claim for recovery of attorneys' fees should be dismissed.

## CONCLUSION

Westlake Services and WPM respectfully request the Court dismiss the Amended Complaint with prejudice, and for any additional relief the Court deems just.

Dated: October 11, 2023                    Respectfully submitted,


                                           By: */s/ A. Eli Kaplan*
                                           **TROUTMAN PEPPER**
                                           **HAMILTON SANDERS LLP**
                                           A. Eli Kaplan (ID No. 310272020)
                                           222 Central Park Avenue, Suite 2000
                                           Virginia Beach, VA 23462
                                           Telephone: (757) 687-7500
                                           Facsimile: (757) 687-7510
                                           eli.kaplan@troutman.com
                                           *Attorneys for Defendants Westlake Services,*
                                           *LLC d/b/a Westlake Financial and*
                                           *Westlake Portfolio Management, LLC*