# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DOWC PROVIDER SERVICES, LLC, ASSURED PROVIDER SERVICES, INC., GUARANTEED PROVIDERS SERVICES, INC., SECURE PROVIDER SERVICES, INC., AND DOWC ADMINISTRATION SERVICES, LLC, | CIVIL ACTION NO. 2:23-CV-3947 (CCC-JSA) |
| Plaintiffs, | |
| v. | |
| U.S. AUTO SALES, INC., U.S. AUTO FINANCE, INC., MILESTONE PARTNERS, LP, MILESTONE PARTNERS FS AIV LP, MILESTONE PARTNERS FS AIV 2 LP, MILESTONE PARTNERS FS AIV 3A LP, MILESTONE PARTNERS FS AIV 3B LP, MILESTONE PARTNERS FS AIV 3C LP, MILESTONE PARTNERS FS AIV 3 BUYER LP, WESTLAKE SERVICES, LLC. d/b/a WESTLAKE FINANCIAL, WESTLAKE PORTFOLIO MANAGEMENT, LLC, JOHN DOES 1-20 AND ABC CORPS. 1-20, | **MEMORANDUM OF LAW IN SUPPORT OF THE MILESTONE PARTIES' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**  **MOTION DATE: December 4, 2023** |
| Defendants. | |

# **TABLE OF CONTENTS**

**Page(s)**

I.     PRELIMINARY STATEMENT ....................................................................1

II.    STATEMENT OF FACTS .........................................................................4
       i.     The Nature of the Case...............................................................4
       ii.    Allegations Against the Milestone Parties .................................4
       iii.   The Bankruptcy ..........................................................................6

III.   LEGAL ARGUMENT................................................................................6
       i.     Rule 12(b)(6) Standard................................................................6
       ii.    Rule 9(b) Standard......................................................................8
       iii.   Plaintiffs' Claims Against the Milestone Parties are Derivative
              and, Therefore, Plaintiffs Lack Statutory Standing to Pursue
              Claims against Milestone as Those Claims Belong Exclusively
              to the Bankruptcy Estate .............................................................9
       iv.    Plaintiffs Fail to State Viable Claims Against the Milestone
              Parties ......................................................................................14
       v.     Count III: Conversion................................................................15
       vi.    Count IV: Fraud........................................................................18
       vii.   Count V and Count XI: Declaratory Judgment...........................20
       viii.  Count VI: Breach of the Implied Covenant of Good Faith and
              Fair Dealing .............................................................................22
       ix.    Count VII: Alter Ego .................................................................23
       x.     Count VIII: Unjust Enrichment..................................................25
       xi.    Count X:  Constructive Trust .....................................................27

IV.    CONCLUSION.........................................................................................28

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Advanced Enterprises Recycling, Inc. v. Bercaw*,
    376 N.J. Super. 153 (Super. Ct. N.J. 2005) .................................................15–16

*Am. Rubber & Metal Hose Co. v. Strahman Valves, Inc.*,
    Case No. 11-1279, 2011 WL 3022243 (D.N.J. July 22, 2011) ...................16–17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).........................................................................................7

*Austar International Limited v. AustarPharma LLC*,
    425 F. Supp. 3d 336 (D.N.J. 2019) ....................................................................15

*Baillie Lumber Co. v. Thompson*,
    612 S.E. 2d 296 (Ga. 2005) ...............................................................................11

*Balanced Bridge Funding LLC v. Mitnick Law Office, LLC*,
    Civil No. 21-20512, 2022 WL 3593892 (D.N.J. Aug. 23, 2022)................26–27

*Bd. of Trs. of Teamsters Local 863 v. Foodtown, Inc.*,
    296 F.3d 164 (3d Cir. 2002) ...........................................................................8, 9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................7

*Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*,
    228 F.3d 275 (3d Cir. 2000) ..............................................................................22

*In re Buildings by Jamie, Inc.*,
    230 B.R. 36 (Bankr. D.N.J. 1998) .....................................................................11

*Capital Investment Funding, LLC v. Lancaster Group, LLC*,
    Case No. 08-cv-4714, 2023 WL 2728716 (D.N.J. Mar. 30, 2023) ...................16

*Chruby v. Kowaleski*,
    534 Fed. Appx. 156 (3d Cir. 2013).....................................................................20

*Cole v. NIBCO, Inc.*,
    No. 13-7871, 2015 WL 2414740 (D.N.J. May 20, 2015) ...................................20

*D&D Tech., Inc. v. CytoCore,*
   Civ. A. No. 14-4217, 2014 WL 4367314 (D.N.J. Sept. 2, 2014) ...................... 18

*In re Emoral, Inc.,*
   740 F.3d 875 (3d Cir. 2014) ........................................... 10, 11, 13, 14

*Erickson v. Pardus,*
   551 U.S. 89 (2007) ................................................................. 7

*Fischbein v. Olson Research Grp., Inc.,*
   959 F.3d 559 (3d Cir. 2020) ........................................................ 7

*Flanigan v. Munson,*
   175 N.J. 597 (N.J. 2003) .......................................................... 27

*Frederico v. Home Depot,*
   507 F.3d 188 (3d Cir. 2007) ...................................................... 18

*Gordon v. Nice Systems, Inc,*
   Civ. A. No. 18-2168, 2020 WL 2316278 (D.N.J. May 11, 2020) ..................... 18

*Great–W. Life & Annuity Ins. Co. v. Knudson,*
   534 U.S. 204 (2002) .............................................................. 28

*In re Great Atl. & Pac. Tea Co., Inc. Sec. Litig.,*
   103 F. App'x 465 (3d Cir. 2004) .................................................. 20

*Harrison v. Soroof Int'l, Inc.,*
   320 F. Supp. 3d 602 (D. Del. 2018) ............................................ 10, 11

*Hatteras Press, Inc. v. Avanti Computer Sys. Ltd.,*
   No. 16-5420, 2017 WL 2838349 (D.N.J. June 30, 2017) ............................ 25

*Hirsch v. Travelers Ins. Co.,*
   341 A.2d 691 (Sup. Ct. N.J. 1975) ............................................... 27

*Jurista v. Amerinox Processing, Inc.,*
   492 B.R. 707 (D.N.J. 2013) .................................................... 25, 28

*Kabbaj v. Google Inc.,*
   592 Fed. Appx. 74 (3d Cir. 2015) ................................................ 20

*Lee Dodge, Inc. v. Kia Motors Am., Inc.*,
No. 10-5939, 2011 WL 3859914 (D.N.J. Aug. 31, 2011) ..................................20

*Lord Abbett v. Citigroup Global Markets, Inc.*,
Civ. A. No. 11-5550, 2012 WL 13034154 (D.N.J. July 12, 2012) .....................8

*Lum v. Bank of Am.*,
361 F.3d 217 (3d Cir. 2004) ......................................................................6–7, 19

*Maniscalco v. Brother Intern. Corp. (USA)*,
627 F. Supp. 2d 494 (D.N.J. 2009) .................................................................25

*Martino v. Everhome Mortg.*,
639 F. Supp. 2d 484 (D.N.J. 2009) .................................................................22

*Mason v. Coca-Cola Co.*,
Civ. A. No. 09-0220, 2010 WL 2674445 (D.N.J. June 30, 2010) ....................25

*In re Maxus Energy Corp.*,
571 B.R. 650 (Bankr. D. Del. 2017) ...............................................................14

*In re Mee Apparel, LLC*,
Civ. A. No. 15-5697, 2016 WL 3535805 (D.N.J. June 28, 2016) ...............10, 11

*Neuss v. Rubi Rose, LLC*,
No. 16-2339, 2017 WL 2367056 (D.N.J. May 31, 2017) ................................20

*Peloro v. United States*,
488 F.3d 163 (3d Cir. 2004) ..........................................................................15

*Presten v. Sailer*,
542 A.2d 7 (Super. Ct. N.J. 1988) ..................................................................27

*Scholes Elec. & Commc'ns., Inc. v. Fraser*,
Case No. 04–3898, 2006 WL 1644920 (D.N.J. Jun. 14, 2006) .........................16

*Sons of Thunder, Inc. v. Borden, Inc.*,
148 N.J. 396 (1997) ......................................................................................22

*State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*,
646 F. Supp. 2d 668 (D.N.J. 2009) .............................................................23, 24

*Torsiello v. Strobeck*,
  955 F. Supp. 2d 300 (D.N.J. 2013) ...................................................................25

*Twin Capital Partners, LLC, v. Wickstrom*,
  Civ. A. No. 20-02869, 2020 WL 6747026 (D.N.J. Nov. 17, 2020) ..................24

*U.S. v. $7,599,358.09*,
  Civ. A. No. 10-5060, 2011 WL 3611451 (D.N.J Aug. 15, 2011) ......................27

*Vita v. Vita*,
  Case No. 21-11060, 2022 WL 376764 (D.N.J. Feb. 8, 2022) ......................16, 18

*Wilson v. Amerada Hess Corp.*,
  168 N.J. 236 (2001) ...........................................................................................22

*In re Wilton Armetale, Inc.*,
  968 F.3d 273 (3d Cir. 2020) ..............................................................................14

## Other Authorities

11 U.S.C. § 541 ........................................................................................................9

11 U.S.C. § 362 ........................................................................................................6

Fed. R. Civ. P. 9(b) .........................................................................................*passim*

Fed. R. Civ. P. 12 ............................................................................................*passim*

Milestone Partners, LP,[1] Milestone Partners FS AIV LP, Milestone Partners FS AIV 2 LP, Milestone Partners FS AIV 3A LP, Milestone Partners FS AIV 3B LP, Milestone Partners FS AIV 3C LP, and Milestone Partners FS AIV 3 Buyer LP (collectively, the "Milestone parties" or "Milestone") submit this memorandum of law in support of their motion to dismiss the Amended Complaint filed by DOWC Provider Services, LLC; Assured Provider Services, Inc; Guaranteed Providers Services, Inc.; Secure Provider Services, Inc.; and DOWC Administration Services, LLC (collectively, "Plaintiffs").

## I.    PRELIMINARY STATEMENT

This is an action for breach of contract between Plaintiffs and U.S. Auto Sales, Inc. ("USA Sales") and U.S. Auto Finance, Inc. ("USA Finance") relating to Plaintiffs' finance and insurance products sold by USA Sales and/or USA Finance to consumers that purchased/financed motor vehicles from them. Plaintiffs are suing USA Sales and USA Finance for allegedly failing to pay for those products under the operative contracts between these parties. In an attempt to take their claims a step further and bring Milestone (who was not a party to any relevant contract) into the litigation, however, Plaintiffs also generally allege that Milestone "owned" USA Sales and, "on information and belief," directed or dominated USA Sales' operations

---

[1] Milestone Partners, L.P. is a fictitious name of an entity that was dissolved in 2017. It never had any ownership interest in USA Sales or USA Finance.

and were otherwise "aware" of USA Sales' breach of its contracts with Plaintiffs. Through these threadbare allegations of control, Plaintiffs attempt to bring claims against Milestone for conversion (Count III), fraud (Count IV), declaratory judgment (Counts V and XI), breach of the duty of good faith and fair dealing (Count VI), alter ego (Count VII), unjust enrichment (Count VIII), and constructive trust (Count X). These claims improperly seek to hold Milestone responsible for USA Sales' alleged breach of contract and $18 million in damages for that breach of contract.

The problem with Plaintiffs' claims against Milestone is that they are premised on alter ego, veil piercing and other derivative forms of liability related to USA Sales' and USA Finance's conduct, but those parties have filed for bankruptcy. Under the Bankruptcy Code, however, the bankruptcy trustee is the only party with the statutory authority to assert claims on behalf of the bankruptcy estate, including alter ego, veil piercing and other derivative claims against Milestone.

In addition to this overarching bankruptcy issue that prevents Plaintiffs from proceeding with their claims against Milestone, each claim is either not available to Plaintiffs as a matter of law or they fail to plausibly allege any cause of action:

<u>Conversion (Count III)</u>:  Plaintiffs allege only a debt owed to them under contracts with USA Sales and USA Finance and not any specific pot of money that was required to be segregated by the Milestone parties for the benefit of the Plaintiffs.  This forecloses any conversion claim.

<u>Fraud (Count IV)</u>:  Plaintiffs allege fraud but fail to meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard.  Plaintiffs only allege generally that the Milestone parties represented that Plaintiffs would be paid in full under its contract(s) with USA Sales—this falls short of plausibly alleging that Milestone acted fraudulently.

<u>Declaratory Judgment (Counts V and XI)</u>:  Plaintiffs attempt to allege two claims for declaratory judgment, but a declaratory judgment is a remedy and not a cause of action.  In any event, Plaintiffs are not entitled to any such remedy because it would have to be based upon a contract claim against Milestone, and Plaintiffs do not (because they cannot) allege that they had any contract with Milestone.

<u>Good Faith and Fair Dealing (Count VI)</u>:  Plaintiffs allege a claim for breach of the duty of good faith and fair dealing, but do not allege a contract with the Milestone parties.  Therefore, there is no duty of good faith and fair dealing between Plaintiffs and the Milestone parties.

<u>Alter Ego (Count VII)</u>:  Plaintiffs only allege—without a hint of specificity— that the Milestone parties are owners of USA Sales, dominated control over it and used it to perpetrate a fraud.  Conclusory allegations are insufficient to plead an alter ego claim under Rule 12 or Rule 9(b).

<u>Unjust Enrichment (Count VIII)</u>:  Plaintiffs attempt to assert a claim for unjust enrichment against Milestone but have not and cannot allege that they expected any

remuneration from the Milestone parties because any remuneration would be through Plaintiffs' contract(s) with USA Sales and/or USA Finance.

Constructive Trust (Count X):  Plaintiffs attempt to assert a "claim" for a constructive trust, but a constructive trust is an equitable remedy based upon a viable claim for unjust enrichment, which the Plaintiffs do not have.

As explained more fully below, all Plaintiffs' claims against the Milestone parties should be dismissed for lack of standing and/or for failure to state a claim.

## II.   STATEMENT OF FACTS

### i.    The Nature of the Case

At the heart of this matter is an alleged breach of contract and relationship between Plaintiff DOWC Provider Services ("DOWC") and USA Sales.  According to the Plaintiffs, USA Sales collected funds for the sale of DOWC products to consumers, but USA Sales failed to pay DOWC over $17,000,000.  Plaintiffs allege that they are owed this amount from USA Sales under various agreements between USA Sales and DOWC.

### ii.   Allegations Against the Milestone Parties

As it relates to the Milestone parties, Plaintiffs include a limited number of allegations in their Amended Complaint, many of which either ignore or conflict with the allegations that it is USA Sales and DOWC that are parties to the contracts at issue and there is no right of payment from Milestone.  Particularly, Plaintiffs only allege that:

- "[U]pon information and belief," Milestone, as the "owners" of USA Sales, directed it to cease operations. Am. Compl. ¶¶ 2, 95 [ECF No. 10].

- Milestone owes DOWC more than $17,000,000 "arising from the Agreements." *Id.* ¶ 3.

- Milestone retained consumer funds and failed to remit them to DOWC. *Id.*

- At the time DOWC and USA Sales entered into the Agreements, Milestone was the owner of USA Sales and dominated its operations. *Id.* ¶ 30.

- Milestone was aware that USA Sales did not remit consumer funds to DOWC. *Id.* ¶¶ 89-90.

- USA Sales took operational direction from Milestone. *Id.* ¶ 119.

- Milestone interfered with DOWC's right to payment for its products and kept funds owed to DOWC. *Id.* ¶¶ 124-126.

- Milestone represented to DOWC that it would be paid in full. *Id.* ¶¶ 130-131.

- Milestone was the owner of USA Sales and controlled and dominated it. *Id.* ¶¶ 159-160, 163.

- Milestone retained funds owed to DOWC as profits. *Id.* ¶ 161.

- Milestone used USA Sales to perpetrate a fraud. *Id.* ¶ 164.

While Plaintiffs allege, as noted above, that the Milestone parties failed to remit payments to DOWC and, therefore, they owe more than $17,000,000 to DOWC, this directly contradicts the Plaintiffs' other allegations regarding the nature of the relationships and contracts at issue. *See* Am. Compl. ¶ 1 ("This matter arises out of a contractual relationship between DOWC and USA Sales for the sale of

DOWC finance and insurance products . . . to consumers . . . ."); *id.* ¶ 25 (DOWC Products are sold through, inter alia, motor vehicle dealerships by way of Administration and Provider Agreements."); *id.* ¶ 28 (DOWC and USA Sales are parties to the Provider Agreement); *id.* ¶ 29 (DOWC and USA Sales are parties to the Administration Agreement); *id.* ¶¶ 103-111 (claim for breach of contract under all the agreements between DOWC and USA Sales). There is no allegation that the Milestone parties are parties to any of the contracts with Plaintiffs.

### iii.    The Bankruptcy

On August 25, 2023, USA Sales and USA Finance each filed a voluntary petition under Chapter 7 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware. Both bankruptcy cases are jointly administered under the case styled as *In re U.S. Auto Sales, Inc., et al.*, Case No. 23-11251 (TMH) (Bankr. D. Del. Aug. 25, 2023). By letter dated September 7, 2023 and docketed on September 12, 2023, counsel for debtors advised this Court of the bankruptcy and automatic stay under § 362 of the Bankruptcy Code. Sept. 12, 2023 Ltr. Regarding Suggestion of Bankruptcy [ECF No. 9].

## III.    LEGAL ARGUMENT

### i.    Rule 12(b)(6) Standard

In reviewing a motion to dismiss, pursuant to Rule 12(b)(6), the Court considers "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim" as well as

documents that are "integral to or explicitly relied upon in the complaint." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)), *abrogated on other grounds*, *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 323 n.23 (3d Cir. 2010). To defeat a motion to dismiss, a complaint must contain sufficient factual matter to state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Indeed, the purpose of the notice pleading standard is that the defendant is entitled to "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In other words, more is required than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will courts accept legal conclusions couched as factual allegations to satisfy pleadings requirements. *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and where they do not adequately plead "a claim of entitlement to relief," dismissal is warranted. *Id.* at 558; *see Fischbein v. Olson Research Grp., Inc.*, 959 F.3d 559, 561 (3d Cir. 2020) (on a motion to dismiss, "we disregard threadbare recitals of the elements of a cause of action, legal conclusions and conclusory statements" (citation omitted)).

## ii.    Rule 9(b) Standard

Plaintiffs also allege claims for fraud, which are subject to Rule 9(b)'s heightened pleading standard requiring a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  "To comply with Rule 9(b), the circumstances surrounding the alleged fraud must be sufficiently pled so as to put the defendant on notice of the precise misconduct with which it is charged." *Lord Abbett Municipal Income Fund, Inc. v. Citigroup Global Markets, Inc.*, Civ. A. No. 11-5550 (CCC), 2012 WL 13034154, at *4 (D.N.J. July 12, 2012) (Cecchi, J.). A plaintiff can meet Rule 9(b)'s standard by specifying the "who, what, when, where, and how: the first paragraph of any newspaper story." *See id.*; *see also Bd. of Trs. of Teamsters Local 863 v. Foodtown, Inc.*, 296 F.3d 164, 173 n. 10 (3d Cir. 2002) ("The requirements of rule 9(b) may be satisfied if the complaint describes the circumstances of the alleged fraud with precise allegations of date, time, or place or by using some means of injecting precision and some measure of substantiation into their allegations of fraud." (citation and emphasis omitted)).  The heightened pleading standard "not only gives defendants notice of the claims against them, but also combats 'frivolous suits brought solely to extract settlements' from defendants and 'provides an increased measure of protection for their reputations.'" *Lord Abbett*, 2012 WL 13034154, at *4 (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1418).

Finally, Rule 9(b)'s this heightened pleading standard not only applies to Plaintiffs' fraud count, but it also applies to Plaintiffs' alter ego count as they alleged that the Milestone parties used USA Sales as an instrument of fraud. *Bd. of Trs. of Teamsters Loc. 863*, 296 F.3d at 173, n. 10 (explaining that "[w]hen a cause of action seeks to pierce the corporate veil on the basis of fraud, it is subject to Fed. R. Civ. P. 9(b)['s]" heightened pleading standards).

### iii. Plaintiffs' Claims Against the Milestone Parties are Derivative and, Therefore, Plaintiffs Lack Statutory Standing to Pursue Claims against Milestone as Those Claims Belong Exclusively to the Bankruptcy Estate

Plaintiffs lack statutory standing to assert claims against the Milestone parties. The claims Plaintiffs attempt to assert against Milestone based on an alter ego theory are clearly derivative and belong exclusively to the bankruptcy estate. Moreover, Plaintiffs' other claims are also derivative as there is no direct relationship between the Milestone parties and Plaintiffs and, therefore, no duties owed by the Milestone parties to Plaintiffs. Thus, while the derivative liability claims against Milestone are camouflaged with labels that might appear to render them direct claims, in truth Plaintiffs' claims are based on an allegation that Milestone owned or controlled USA Sales and directed it to cease operations. Only the bankruptcy trustee may assert such claims, and they must be dismissed in this Court.

The filing of a bankruptcy creates an "estate" that is generally comprised of "all legal or equitable interests of the debtor." 11 U.S.C. § 541. Once an estate is

created, the bankruptcy trustee has exclusive authority to assert claims that are property of the estate. *In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014) (acknowledging that creditors "lack standing to assert claims that are property of the estate"); *Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 612-13 (D. Del. 2018) (holding that claims are property of the estate after reviewing the factual allegations in the complaint and noting that the allegations could have been asserted by any number of creditors to establish alter ego liability); *In re Mee Apparel, LLC*, Civ. A. No. 15-5697, 2016 WL 3535805, at *4–8 (D.N.J. June 28, 2016) (reversing a bankruptcy court's decision and holding that general claims alleging veil-piercing/alter ego were property of the bankruptcy estate). A claim is property of the estate if (i) it existed at the commencement of the bankruptcy filing and the debtor could have asserted the claim on its own under state law; and (ii) it is, *by looking at the nature of the claim*, a general claim with no particularized injury. *Emoral*, 740 F.3d at 879; *Harrison*, 320 F. Supp. 3d at 612-13; *Mee Apparel*, 2016 WL 3535805, at *4–5.

*First*, the claims asserted against Milestone existed as of the August 25, 2023 petition date, *see* Sept. 7, 2023 Ltr. [ECF No. 9], and Plaintiffs seek damages for conduct that allegedly occurred between September 2021 and April 2023. Am. Compl. ¶¶ 52, 76, 82–83, 91–94, 107–08.

Assuming that Milestone directed USA Sales to withhold payments from Plaintiffs (which the Amended Complaint does not plausibly allege), USA Sales could assert an alter ego claim against Milestone under any of the applicable state laws including Georgia (where USA Sales is domiciled), New Jersey (where the Complaint and Amended Complaint were filed) and Delaware (where the bankruptcy cases are pending).  Georgia, New Jersey and Delaware all permit a subsidiary to assert alter ego claims against its parent corporation.  *Emoral*, 740 F.3d at 880–81 (applying New Jersey law and finding that it would permit a debtor to assert an alter ego or veil-piercing theory against its parent); *Harrison*, 320 F. Supp. 3d at 616 (applying Delaware law); *Mee Apparel*, 2016 WL 3535805, at *4–5 (applying New Jersey law); *In re Buildings by Jamie, Inc.*, 230 B.R. 36, 43 (Bankr. D.N.J. 1998) (applying New Jersey law); *Baillie Lumber Co. v. Thompson*, 612 S.E. 2d 296, 300–01 (Ga. 2005) (applying Georgia law).

*Second*, Plaintiffs' claims against Milestone are general in nature.  The Amended Complaint specifically alleges improper conduct by USA Sales, but its allegations against Milestone are general at best.  As the alter ego allegations could be asserted by any creditor of USA Sales, the claims belong to the bankruptcy estate and the bankruptcy trustee has exclusive authority to pursue claims against Milestone.

Plaintiffs' conclusory allegations of Milestones' control over USA Sales demonstrate these are general claims. The Amended Complaint alleges broadly that "Milestone was the owner of USA Sales and dominated its operations," Am. Compl. ¶ 30, and that the Chief Executive Officer represented to Plaintiffs that USA Sales was directed by Milestone. *Id.* ¶¶ 159–60. However, these broad allegations of control are not limited to only the claims between Plaintiffs and USA Sales. At no point do Plaintiffs allege that USA Sales intentionally represented to *only* Plaintiffs that Milestone controlled its operations or otherwise assert that Milestone intentionally held itself out only to Plaintiffs in a specific way. Plaintiffs concede this in the Amended Complaint when they assert: (i) that the Chief Executive Officer emailed all of USA Sales's employees and stated Milestone controlled its operations, *id.* ¶ 159, and (ii) that "Milestone controlled US Sales' operational funds and received USA Sales' profits, *which included, in part*" certain funds owed to Plaintiffs. *Id.* ¶ 160 (emphasis added). By Plaintiffs' own admissions, USA Sales represented to other constituencies, including employees and parties contributing to its profits, that Milestone controlled its operations. These broad allegations of control and dominion are therefore "general" in nature, and the claims asserted via an alter ego theory belong to the bankruptcy estate.

Moreover, Plaintiffs appear to recognize that the alter ego claims against Milestone are general in nature. The Amended Complaint asserts that USA Sales's

conduct harmed *other consumers*.  *Id.* ¶ 80 (stating that USA Sales was aware that its failure to pay "left the consumers" without an in force product); *id.* ¶ 90 (asserting that USA Sales's failure to pay "made the consumer loans" defective); *id.* ¶ 162 ("USA Sales and Milestone would perpetrate a fraud or injustice upon DOWC and the consumers."); *id.* ¶ 163 (asserting that the alleged conduct "resulted in fraudulent and injurious consequences for DOWC and consumers"); *id.* ¶ 164 (alleging that a fraud was perpetrated on "the consumers that purchased the DOWC Products").  If the claims asserted by Plaintiffs were specific "with a particularized injury," consumers would not have been harmed by the same conduct (*i.e.* USA Sales's failure to pay for the DOWC products) and would not be able to use the same assertions to pursue claims against Milestone.  Moreover, if Plaintiffs' assertions that Milestone controlled and dominated USA Sales's operations were true, the claims in the Amended Complaint would inure to the benefit of every customer with a DOWC product that is "not in force" because Plaintiffs' alter ego claim against Milestone is based on the same facts that are generally available to every other creditor.  Plaintiffs' own assertions, therefore, reinforce the fact that the alter ego claims against Milestone are general in nature.

The fact that Plaintiffs' damages stem from the agreements with USA Sales is irrelevant.  Under the Third Circuit's *Emoral* decision, the question of whether a claim belongs to a bankruptcy estate requires an analysis of the *nature of the claim—*

not the particularized injury stemming from an agreement. *Emoral*, 740 F.3d at 879. Courts following *Emoral* have held that claims can be property of the bankruptcy estate even if they stem from a specific agreement. *See In re Maxus Energy Corp.*, 571 B.R. 650, 658 (Bankr. D. Del. 2017) (stating that although certain alter ego claims were "unique" in that they stemmed from an agreement that could be invoked by only the creditor, the claims were "general" because they were based on an alter ego theory which could be asserted by any creditor).

For the foregoing reasons, the claims against Milestone based on an alter ego theory and all other claims that are derivative belong to the bankruptcy estate and can only be asserted by the bankruptcy trustee. Plaintiffs, therefore, lack standing to assert claims against Milestone on an alter ego theory, and the Complaint should be dismissed as to Milestone.[2]

### iv.    Plaintiffs Fail to State Viable Claims Against the Milestone Parties

Even if the Court were to determine that Plaintiffs' have standing or the power to assert the alter ego claim and the other derivative claims, they should still be

---

[2] The Third Circuit has acknowledged some confusion as it relates to "standing" in the context of creditors asserting claims that are reserved for the bankruptcy trustee. While the creditor may have constitutional standing, it does not have statutory standing under the Bankruptcy Code. As such, it is the bankruptcy trustee that is vested with the power to assert claims against the Milestone parties at this point and time and Plaintiffs lack that power. *See In re Wilton Armetale, Inc.*, 968 F.3d 273, 280-281 (3d Cir. 2020).

dismissed for failure to state a claim. The claims asserted against the Milestone parties either do not exist as a matter of law or fail to meet the requisite pleading standards.

### v.    Count III: Conversion

Under New Jersey law, conversion "is essentially the wrongful exercise of dominion and control over the property of another in a manner inconsistent with the other person's rights in that property." *Peloro v. United States*, 488 F.3d 163, 173–74 (3d Cir. 2004) (citation omitted). To state a claim for conversion, Plaintiffs must assert (i) the existence of property, (ii) its right to immediate possession of the property, and (iii) the defendants' wrongful interference with such right. *Austar Int'l Ltd. v. AustarPharma LLC*, 425 F. Supp. 3d 336, 357 (D.N.J. 2019).

The "property" at issue here is not the type of property that is the usual subject of a conversion cause of action. Rather, it is simply money or amounts that DOWC alleges is due under its contracts with USA Sales. A claim for conversion of money, however, is closely scrutinized. A plaintiff cannot transform a breach of contract claim into a conversion claim. *Advanced Enterprises Recycling, Inc. v. Bercaw*, 376 N.J. Super. 153, 161 (Super. Ct. N.J. 2005). If the parties' positions are more akin to a debtor-creditor relationship,[3] a claim for conversion must fail:

---

[3] The Milestone parties are not even the debtor here as the debtor under the contractual relationship with DOWC is USA Sales. This is yet another reason that

> An action for conversion will not lie in the context of a mere debt
> . . . , however.  Where there is no obligation to return the identical
> money, but only a relationship of a debt and creditor, an action for
> conversion of the funds representing the indebtedness will not lie
> against the debtor.

*Id.* (citing 18 Am. Jur. 2d Conversion § 8 (2004)).  Indeed, courts routinely reject conversion claims where the parties were in a debtor-creditor relationship.  *Id.*; *see also, e.g.*, *Capital Investment Funding, LLC v. Lancaster Group, LLC*, Case No. 08-cv-4714, 2023 WL 2728716, at *14 (D.N.J. Mar. 30, 2023) (granting summary judgment on a conversion claim because the parties stood in a creditor-debtor relationship); *Vita v. Vita*, Case No. 21-11060, 2022 WL 376764, at *3 (D.N.J. Feb. 8, 2022) (dismissing a conversion claim under Rule 12(b)(6) because the plaintiff merely alleged that, according to a contract between the parties, the defendants owed her money).  Thus, the money subject to a claim for conversion should be "identifiably the plaintiff's property" or there should be an obligation "to segregate such money for the plaintiffs' benefit."  *Scholes Elec. & Commc'ns., Inc. v. Fraser,* Case No. 04–3898, 2006 WL 1644920, at *5 (D.N.J. Jun. 14, 2006); *see also Am. Rubber & Metal Hose Co. v. Strahman Valves, Inc.*, Case No. 11-1279, 2011 WL 3022243, at *7 (D.N.J. July 22, 2011) ("[A]llegedly converted money is deemed

---

Plaintiffs cannot plead a viable cause of action against the Milestone parties— because they never took possession of any discrete property of Plaintiffs.

a mere debt unless there is a requirement that the 'identical money' be repaid." (citation omitted)).

Plaintiffs' conversion claim fails to state a claim for relief. Plaintiffs do not expressly allege that they had an *immediate* right to the property. Am. Compl. ¶ 44 (asserting that payments must be made in a "timely" manner). Plaintiffs also failed to allege any arrangement wherein Milestone was required to segregate the amounts USA Sales received from each sale to a customer and remit those segregated amounts.

Additionally, Plaintiffs and USA Sales (and Milestone under Plaintiffs' alter ego theory) also stand in a mere debtor-creditor relationship. The Amended Complaint explains that the applicable contracts delineate the relationship between the parties: USA Sales would pay to Plaintiffs a fee for each DOWC product that USA Sales sold to a customer. *Id.* ¶ 51. To evidence that a payment to Plaintiffs was required when a sale transaction was complete, each contract between USA Sales and a customer noted that the DOWC product was an item for which payment to a third-party payee would be made. *Id.* ¶ 122. As this structure suggests, the amounts owed to Plaintiffs after each sale transaction were merely debts owed. Indeed, Plaintiffs' own assertions acknowledge that a debtor-creditor relationship exists. Plaintiffs assert that they are "owed funds" for each DOWC product sold, *id.* ¶ 126, and that USA Sales and Milestone wrongfully interfered with that right "by

not remitting payment" to Plaintiffs.  *Id.* ¶ 123.  These allegations stem from the obligations under the contracts between DOWC and USA Sales.  As a result, Plaintiffs asserted a *breach of contract claim* against USA Sales for its failure to remit payment as required by those contracts.  Because the basis for the conversion claim mirrors the basis for the breach of contract claim (*i.e.,* the failure to pay amounts owed after each sale to a third party), the parties stand in a debtor-creditor relationship.  Plaintiffs should not be permitted to transform a breach of contract claim into a conversion claim and effectively seek a second breach of contract claim with the same basis.[4]

### vi.    Count IV: Fraud

To state a claim for fraud under New Jersey law, a plaintiff is required to allege "(1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage." *Frederico v. Home*

---

[4] Courts have dismissed claims for conversion of money under Rule 12(b)(6).  *Vita*, 2022 WL 376764, at *3 (dismissing a conversion claim under Rule 12(b)(6) because the plaintiff simply alleged that, according to a contract between the parties, the defendants owed her money); *Gordon v. Nice Systems, Inc*, Civ. A. No. 18-2168 (ES)(CLW), 2020 WL 2316278, at *4–5 (D.N.J. May 11, 2020) (dismissing conversion claim at the motion to dismiss stage because it was "simply a restatement of Plaintiff's claim for money owed pursuant to the contract at issue"); *D&D Tech., Inc. v. CytoCore*, Civ. A. No. 14-4217 (JLL)(JAD), 2014 WL 4367314, at *4 (D.N.J. Sept. 2, 2014) (same).

*Depot*, 507 F.3d 188, 200 (3d Cir. 2007).  These allegations must also meet Rule 9(b)'s heightened pleading standard.  Fed. R. Civ. P. 9(b) ("[A] party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").  To get there, the allegations need to include "the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Lum v. Bank of America*, 361 F.3d 217, 224 (3d Cir. 2004).  Plaintiffs' allegations of fraud do not sufficiently plead these elements and certainly not in the detail required by Rule 9(b) and, therefore, the allegations are not plausible.

Plaintiffs allege that USA Sales and Milestone represented to DOWC that it would be paid the outstanding balance (Am. Compl. ¶ 130); that USA Sales and Milestone represented to DOWC that they would pay for the products sold on each retail installment sales contract (*id.* ¶ 131); that USA Sales and Milestone knew that they needed to include DOWC products in transactions with consumers (*id.* ¶ 132); that USA Sales CEO represented to DOWC that the company was working with Milestone to pay for DOWC products (*id.* ¶ 133); and that USA Sales and Milestone made these representations intending that DOWC rely upon them (*id.* ¶ 134).

As an initial matter, Plaintiffs nowhere alleged that the Milestone parties made any direct representations to the Plaintiffs.  Rather, they simply lump two defendants together and allege that "USA Sales and Milestone" made certain representations

19

that DOWC would be paid. *See, e.g.*, Am. Compl. ¶¶130-132, 134. But the problems with Plaintiffs' fraud count do not stop there. In addition to there being no allegation of any direct representations by the Milestone parties to Plaintiffs, nowhere in the Amended Complaint do Plaintiffs allege the "who, what, where, when and how" of the alleged fraud. *In re Great Atl. & Pac. Tea Co., Inc. Sec. Litig.*, 103 F. App'x 465, 469 (3d Cir. 2004) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). Without any allegations of direct representations from the Milestone parties and insufficient details regarding the alleged fraudulent representations to put the Milestone parties on notice of the claim, Plaintiffs fail state a claim for fraud.

### vii.  Count V and Count XI: Declaratory Judgment

In Counts V and XI of the Amended Complaint, Plaintiffs seek a declaration that the Milestone parties are "responsible for all consumer refunds and any claims made by consumers related to the DOWC products." Am. Compl. at Count V, Ad Damnum Clause at item (d); Count XI, Ad Damnum Clause at item (f).

*First*, a declaratory judgment is not an independent cause of action but rather a remedy and courts routinely dismiss standalone counts for declaratory relief. *Chruby v. Kowaleski*, 534 Fed. Appx. 156, 160 n.2 (3d Cir. 2013); *Kabbaj v. Google Inc.*, 592 Fed. Appx. 74, 75 n.2 (3d Cir. 2015) (affirming dismissal because "declaratory and injunctive relief are remedies rather than causes of action."); *Neuss*

*v. Rubi Rose*, LLC, No. 16-2339, 2017 WL 2367056, at *9 (D.N.J. May 31, 2017) ("injunctive and declaratory relief are remedies—not independent causes of action."); *Cole v. NIBCO, Inc.*, No. 13-7871, 2015 WL 2414740, at *15 (D.N.J. May 20, 2015) ("declaratory relief and injunctive relief, as their names imply, are remedies, not causes of action."); *Lee Dodge, Inc. v. Kia Motors Am., Inc.*, No. 10-5939, 2011 WL 3859914, at *1 n.1 (D.N.J. Aug. 31, 2011) (dismissing counts because they "are not substantive claims but rather requests for remedies").

*Second*, Plaintiffs have plead no plausible facts that could support such a declaration against the Milestone parties. In support of this declaration request, Plaintiffs merely claim the Milestone parties:

(1)  "[I]nfringed upon DOWC's contractual rights and breached [its] obligations to DOWC." Am. Compl. at ¶ 142. **But**, Milestone is not a party to the underlying agreements and, to the extent this allegation suggests tortious interference, Plaintiffs do not make any such affirmative claim against Milestone.

(2)  "[F]ailed to remit payment to DOWC for DOWC Products sold to consumers." *Id.* ¶ 143; *see also id.* ¶¶ 144-145, 147. **But**, Plaintiffs have not plausibly alleged why it would be entitled to, or even could reasonably expect, any payment from Milestone (as compared to the actual party to the contracts, USA Sales).

To seek a declaration of rights, there must be an adequately pled judiciable controversy between the parties, usually declaring the rights of parties to a contract. Plaintiffs do not plead any relationship between themselves and the Milestone parties. In fact, they plead quite the opposite by alleging no direct contract or relationship, but rather only that Milestone parties own or otherwise vaguely control USA Sales.

A claim for declaratory relief is not a cause of action, and even if it were, Plaintiffs do not plausibly plead a controversy between them and the Milestone parties that would warrant that relief.

### viii.    Count VI: Breach of the Implied Covenant of Good Faith and Fair Dealing

All contracts include an implied covenant that the parties to the contract will act in good faith. *See Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420 (1997); *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (2001) ("A covenant of good faith and fair dealing is implied in every contract in New Jersey."); *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000). The implied covenant of good faith and fair dealing requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.*

In the present case, Plaintiffs fail to state a breach of the covenant of good faith and fair dealing claim against the Milestone parties for the simple reason that

there is no contract between these parties, and none is even alleged. *Martino v. Everhome Mortg.*, 639 F. Supp. 2d 484, 496 (D.N.J. 2009) ("Plaintiffs do not (and cannot) allege that they had a contractual relationship with Cooper, who was Alliance Mortgage's attorney in the foreclosure action. Without a contract, there is no duty of good faith and fair dealing, therefore Plaintiffs' good faith and fair dealing claim against Cooper must be dismissed.").

### ix.    Count VII: Alter Ego

As set forth above, the alter ego claims against Milestone should be dismissed for lack of standing.  In addition, the claim is insufficiently pled.

In New Jersey, two elements are required for an alter ego claim: "First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist.  Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice."  *State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC,* 646 F. Supp. 2d 668, 679 (D.N.J. 2009) (citation omitted).  Six factors may assist in this determination:  "[1] gross undercapitalization . . . [2] failure to observe corporate formalities, non-payment of dividends, [3] the insolvency of the debtor corporation at the time, [4] siphoning of funds of the corporation by the dominant stockholder, [5] non-functioning of other officers or directors, absence of corporate records, and [6] the fact that the corporation is merely a facade for the

operations of the dominant stockholder or stockholders." *Id.* (citing *Craig v. Lake Asbestos of Quebec, Ltd.,* 843 F.2d 145, 150 (3d Cir. 1988)).

"Proving that a corporation is merely an alter ego is a burden that is notoriously difficult for plaintiffs to meet." *Id.* (citation and internal quotation omitted). To succeed on an alter ego theory of liability, "plaintiffs must essentially demonstrate that in all aspects of the business, the two corporations actually functioned as a single entity and should be treated as such." *Id.* However, "the bare-boned allegations of . . . common control and/or management, standing alone, do not rise to the level of plausibility required to survive a 12(b)(6) motion." *Twin Capital Partners, LLC, v. Wickstrom,* Civ. A. No. 20-02869, 2020 WL 6747026, at *4 (D.N.J. Nov. 17, 2020) (citation omitted).

DOWC's allegations that the Milestone parties are the of alter ego of USA Sales are inadequate. DOWC makes general statements regarding "dominion" and "control," but the only factual assertions alleged are that, on a few occasions, USA Sales represented that Milestone directed USA Sales to do something. However, as with all companies with a vertical corporate structure, a parent company may direct a subsidiary to do something. This alone cannot be sufficient for an alter ego claim. Moreover, DOWC does not allege any of the six factors. These "bare bones" assertions cannot meet the standard under Rule 12(b)(6). Additionally, and to the

extent Plaintiffs seek to pierce the corporate veil alleging fraud, Plaintiffs fail to plead this claim with the specificity required by Rule 9(b).

### x.    Count VIII: Unjust Enrichment

Under New Jersey law, a claim for unjust enrichment requires allegations that (i) the defendant received a benefit at a plaintiff's expense (ii) under circumstances that would make it unjust for defendant to retain the benefit without paying for it. *Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 312 (D.N.J. 2013). A plaintiff must also show that it "expected remuneration from [the] defendant at the time it performed or conferred a benefit on [the] defendant" beyond its contractual rights. *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 754 (D.N.J. 2013). A direct relationship between the parties is also required. *Maniscalco v. Brother Intern. Corp. (USA)*, 627 F. Supp. 2d 494, 506 (D.N.J. 2009) (citing *Cooper v. Samsung Elecs. Am. Inc.,* No. 07–3853, 2008 WL 4513924, at *10 (D.N.J. Sept. 30, 2008)). In addition, a claim for unjust enrichment must fail if there are allegations comprising other torts or an agreement governing the parties' conduct. *Hatteras Press, Inc. v. Avanti Computer Sys. Ltd.*, No. 16-5420, 2017 WL 2838349, at *5 (D.N.J. June 30, 2017); *Mason v. Coca-Cola Co.*, Civ. A. No. 09-0220, 2010 WL 2674445, at *7 (D.N.J. June 30, 2010).

Plaintiffs' claims are fundamentally based on a contract, albeit one to which Milestone was not a party. That contractual relationship between Plaintiffs and USA

Sales defeats an unjust enrichment claim. The Milestone parties are merely indirect owners of the parties alleged to have entered contracts with Plaintiffs. It would be unreasonable to believe that an owner or shareholder of a company would pay amounts owed on account of the company's agreement. Accordingly, Milestone could not have been unjustly enriched as Plaintiffs could not reasonably expect remuneration from Milestone.

Moreover, Plaintiffs did not allege that there was any direct engagement or direct relationship between Plaintiffs and Milestone. As set forth in the Amended Complaint, Plaintiffs reach Milestone through only the alleged representations from USA Sales that Milestone controlled and dominated its operations. Absent a direct relationship between Plaintiffs and Milestone, Plaintiffs cannot state a claim for unjust enrichment.

Finally, Plaintiffs have already asserted a breach of contract claim and various other torts against USA Sales (and Milestone through an alter ego theory). The basis for these claims is the contracts to which Milestone is not a party. Plaintiffs cannot seek amounts for unjust enrichment against Milestone when it is also seeking the same amounts against USA Sales for the breach of contract that gave rise to the allegations of unjust enrichment. *Compare* Am. Compl. ¶ 111 (alleging damages for breach of contract totaling $17,891,519.00), *with id.* ¶ 173 (alleging damages for unjust enrichment totaling $17,891,519.00).

### xi.    Count X:  Constructive Trust

A constructive trust "is an equitable remedy and not an independent cause of action." *Balanced Bridge Funding LLC v. Mitnick Law Office, LLC*, Civil No. 21-20512, 2022 WL 3593892, at *2 (D.N.J. Aug. 23, 2022) (collecting cases).  "To impose a constructive trust, [courts] must find both that a party committed a wrongful act and that, as a result, the recipient was unjustly enriched." *Id.* (quoting *John Hancock Life Ins. Co. (U.S.A.) v. Clemente*, No. 20-2772, 2021 WL 6932819, at *2 (3d Cir. 2021)).  A breach of contract claim "alone is not sufficient and does not qualify as the type of wrongful act or fraud which would warrant the imposition of a constructive trust." *Presten v. Sailer*, 542 A.2d 7, 15 (Super. Ct. N.J. 1988).

The imposition of a constructive trust also requires the plaintiff to trace the funds subject to the constructive trust.  *See, e.g.*, *U.S. v. $7,599,358.09*, Civ. A. No. 10-5060, 2011 WL 3611451, at *2 (D.N.J. Aug. 15, 2011) ("It is hornbook law that before a constructive trust may be imposed, a claimant to a wrongdoer's property must trace his own property into a product in the hands of a wrongdoer . . . In order to effectively trace trust funds commingled with other funds, the beneficiary must do more than simply trace the trust proceeds into a trustee's bank accounts." (citations omitted)); *see also Hirsch v. Travelers Ins. Co.*, 341 A.2d 691, 694 (Sup.

Ct. N.J. 1975) (requiring a party to "trace" funds resulting from a gratuitous transfer to a third party to impose a constructive trust).

There are two problems with Plaintiffs' constructive trust claim. *First*, for the reasons stated above, Plaintiffs have failed to state a claim for unjust enrichment. Without that claim, a remedy for a constructive trust does not lie. *See generally Flanigan v. Munson*, 175 N.J. 597, 608 (N.J. 2003) (the premise of a constructive trust is to prevent unjust enrichment); *Jurista*, 492 B.R. at 771–72 (without the "touchstone" of unjust enrichment, plaintiff cannot proceed with a constructive trust claim). *Second*, a constructive trust requires that the property over which a trust is sought be readily traceable, particular funds and not merely "some funds" for benefits to which a party is contractually entitled. *Great–W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002). Here, Plaintiffs seek a trust over a sum of money which is fungible, presumably comingled with USA Sales' general funds from other business/contracts, and, in any event, not traceable or identifiable as particular property or bucket of money in the possession of the Milestone parties. Rather, Plaintiffs seek a judgment for money due under its contract with USA Sales, which is incompatible with the imposition of a constructive trust.

## IV.    CONCLUSION

The claims asserted in the Amended Complaint belong to the bankruptcy estate and Plaintiffs do not have the right to pursue them here. Moreover, even if

the Plaintiffs could bring these claims in this Court, they fail to plausibly allege any

viable claims against the Milestone parties.  The Court should, accordingly, dismiss

the claims in the Amended Complaint against Milestone.

Respectfully submitted,


*s/  Jeffrey A. Carr*

Jeffrey A. Carr
**TROUTMAN PEPPER HAMILTON**
 **SANDERS LLP**
301 Carnegie Center
Suite 400
Princeton, NJ 08540
(609) 951-4116
jeff.carr@troutman.com

Dated:  November 3, 2023

*Attorney for Defendants Milestone*
*Partners, LP, Milestone Partners FS*
*AIV LP, Milestone Partners FS AIV 2*
*LP, Milestone Partners FS AIV 3A LP,*
*Milestone Partners FS AIV 3B LP,*
*Milestone Partners FS AIV 3C LP,*
*Milestone Partners FS AIV 3 Buyer LP*