UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
**JESSICA S. ALLEN**
UNITED STATES MAGISTRATE JUDGE

Martin Luther King, Jr. Federal Bldg.
& U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102
(973-645-2580)

**LETTER ORDER**

May 23, 2024

TO:   ALL COUNSEL OF RECORD

Re:   DOWC Provider Service, LLC, et al. v. U.S. Auto Sales, Inc., et al.
      Civil Action No. 23-3947 (CCC) (JSA)

Dear Counsel:

This case involves a breakdown in complex contractual relationships regarding motor vehicle service contracts. Plaintiffs (referred to as the "DOWC Parties" or "DOWC") are five entities[1] that sell and administer insurance products for the automotive industry including motor vehicle service contracts ("DOWC products"). There are eleven named defendants, divided into three groups: (1) U.S. Auto, which sells and/or finances motor vehicles to consumers;[2] (2) the Milestone Defendants, who allegedly own U.S. Auto;[3] and (3) the Westlake Defendants, entities who service U.S. Auto's financing.[4]

As discussed below, U.S. Auto is bankrupt, and DOWC's claims against U.S. Auto are automatically stayed. Before the Court is the Westlake Defendants' motion to stay the proceedings as to them, pending U.S. Auto's bankruptcy. (ECF Nos. 22, 36). The DOWC parties oppose the motion. (ECF No. 31).[5] The Court did not hear oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons set forth below, the Westlake Defendants' motion is **GRANTED**.

---

[1] (1) DOWC Provider Services, LLC; (2) Assured Provider Services, Inc.; (3) Guaranteed Provider Services, Inc.; (4) Secure Provider Services, Inc.; and (5) DOWC Administration Services, LLC (collectively, "DOWC" Parties" or "DOWC"). (*See* Amended Complaint ("AC") ¶¶ 7-11; ECF No. 10).

[2] (1) U.S. Auto Sales, Inc., and (2) U.S. Auto Finance, Inc. (collectively, "U.S. Auto") (AC ¶¶ 12-13).

[3] (1) Milestone Partners, L.P.; (2) Milestone Partners FS AIV LP; (3) Milestone Partners FS AIV 2 LP; (4) Milestone Partners FS AIV 3A LP; (5) Milestone Partners FS AIV 3B LP; (6) Milestone Partners FS AIV 3C LP; and (7) Milestone Partners FS AIV 3 Buyer LP (collectively, "Milestone Defendants") (AC ¶ 14).

[4] (1) Westlake Services LLC d/b/a Westlake Financial; and (2) Westlake Portfolio Management, LLC (collectively, the "Westlake Defendants," "Westlake," or the "Westlake parties.") (AC ¶ 15).

[5] A review of the official court docket confirms that the Milestone Defendants did not submit any papers in connection with the pending motion to stay.

I. **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**[6]

The following relevant facts are alleged in the amended complaint. The DOWC parties and U.S. Auto entered into a series of contractual agreements through which U.S. Auto appointed the DOWC parties as the exclusive provider of DOWC products, including motor vehicle service contracts. (AC, ¶¶ 28-32). Pursuant to these agreements, when a consumer purchased a DOWC product from U.S. Auto and financed the purchase of a vehicle, U.S. Auto included a premium for the DOWC product in the amount financed, and then advanced the full premium due to DOWC. (*Id.*, ¶ 1). Thereafter, consistent with amendments to these agreements, U.S. Auto sold DOWC products, paid a fee to DOWC for each product, and paid consumer claims and refunds, which DOWC billed to U.S. Auto monthly. (*Id.*, ¶ 51). According to DOWC, under the parties' agreements, the DOWC products, including service warranties, were not "in effect" for consumers until U.S. Auto paid DOWC. (*Id.*, ¶ 55). At some point in 2021, U.S. Auto began to underpay its monthly invoices for DOWC products sold, customer claims and refunds, and other fees. (*Id.*, ¶¶ 52, 55). Throughout 2022, U.S. Auto and DOWC discussed the underpayments and efforts to bring the accounts current. (*Id.*, ¶¶ 62-63, 84, 93). Despite this, U.S. Auto's underpayments allegedly grew to approximately $17 million. (*Id.*, ¶ 111). In April 2023, U.S. Auto ceased operations, which DOWC contends was done at the direction of the Milestone Defendants. (*Id.*, ¶¶ 2, 89, 95). Thereafter, the Westlake Defendants took over the servicing of U.S. Auto's financing, which allegedly included funds for the DOWC products that consumers paid for or financed. (*Id.*, ¶ 4, 99-101).

On July 24, 2023, DOWC commenced this action, filing a twelve-count complaint, alleging, *inter alia*, fraud and breach of contract against U.S. Auto and Milestone only, and unjust enrichment, declaratory judgment, and interference with prospective economic advantage against the Westlake Defendants. (ECF No. 1).

On August 25, 2023, U.S. Auto filed for Chapter 7 bankruptcy. (ECF No. 9). On September 12, 2023, U.S. Auto filed notice of its bankruptcy on this Court's docket. (*Id.*) As a result, pursuant to 11 U.S.C. § 362(a), this action is automatically stayed against U.S. Auto. *See id.*; *see also Acands, Inc. v. Travelers Cas. & Surety Co.*, 435 F.3d 252, 259 (3d Cir. 2006) ("The stay mandated by this provision is automatic in that the debtor does not have to make any formal request that it be issued or that it apply to a particular proceeding.").

On September 27, 2023, before any Defendant responded to the original complaint, DOWC filed a twelve-count amended complaint. (ECF No. 10). As with the original complaint, the amended complaint contains different claims against the different party Defendants. Relevant here, DOWC asserts five (5) claims against the Westlake Defendants: (1) unjust enrichment; (2) breach of contract under a third-party beneficiary theory; (3) declaratory judgment establishing a constructive trust; (4) declaratory judgment of DOWC's rights under the agreements; and (5) interference with prospective economic advantage. (*See id.*, ¶¶ 166-73, 174-84, 185-91, 207-16).

On October 11, 2023, the Westlake Defendants filed a motion to dismiss, pursuant to

---

[6] Since the parties are familiar with the entire factual and procedural history, the Court sets forth only that background relevant to decide the present motion.

Federal Rule of Civil Procedure 12(b)(6). (ECF No. 14). On November 3, 2023, the Milestone Defendants filed a motion to dismiss, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). (ECF No. 20). The motions to dismiss are fully briefed and pending.

On November 10, 2023, the Westlake Defendants filed the instant motion to stay DOWC's claims asserted against them, pending the outcome of U.S. Auto's bankruptcy proceedings. (ECF Nos. 22-23).

## II.     CURRENT MOTION

In support of their motion, the Westlake Defendants argue that an extension of the automatic bankruptcy stay applicable to U.S. Auto is warranted and, in the alternative, a discretionary stay, pursuant to the Court's inherent authority, is appropriate. (ECF No. 23 at 9).

With respect to an extension of the automatic bankruptcy stay, the Westlake Defendants contend that all DOWC's claims asserted against them are derivative of the claims asserted against U.S. Auto. (*Id.* at 10). In other words, according to the Westlake Defendants, they cannot be held liable to DOWC without first finding U.S. Auto liable, thereby making U.S. Auto an indispensable party. (*Id.* at 11). Separately, the Westlake Defendants argue that U.S. Auto has indemnification obligations to the Westlake Defendants. They continue that the relevant case law supports extending the automatic stay to cover DOWC's claims against them because U.S. Auto is the real party in interest based on the applicable indemnification agreement. (*Id.* at 12).

In the alternative, the Westlake Defendants contend that, even if the Court declines to extend the automatic bankruptcy stay to cover DOWC's claims, the Court should exercise its inherent authority to impose a discretionary stay. (*Id.* at 13). According to the Westlake Defendants, a stay is warranted because DOWC would not suffer any prejudice from a stay. In contrast, the Westlake Defendants would be prejudiced without a stay because DOWC's claims against the Westlake Defendants are inextricably intertwined with U.S. Auto's alleged acts and omissions. The Westlake Defendants submit that U.S. Auto's involvement in this case is necessary to proceed. (*Id.* at 13-18).

DOWC filed one brief in opposition to the Westlake Defendants' separate motions to dismiss and to stay. (*See* ECF No. 31).[7] DOWC acknowledges that the Westlake Defendants did not sell the DOWC products at issue. (*Id.* at 37). However, DOWC contends that the Westlake Defendants' liability stems from their misconduct committed in their roles as named servicer of the U.S. Auto loans. (*Id.* at 37-38). Specifically, according to DOWC, they are owed millions of dollars by U.S Auto for the coverage provided by the DOWC products. (*Id.* at 38). According to DOWC, the Westlake Defendants were collecting consumer funds that consumers financed to pay for DOWC products; however, the Westlake Defendants allegedly refused to turn over the consumer funds collected. (*Id.*) Finally, DOWC contends that they would suffer prejudice from a stay because the public in general is confused as to whether certain vehicle service contracts are "in effect," resulting in inquiries from "states' attorneys' general and

---

[7] Only three (3) pages of DOWC's forty (40) page omnibus opposition brief address the Westlake Defendants' motion to stay. (*See* ECF No. 31 at 37-39).

3

lawyers representing consumers." (*Id.* at 39).

On reply, the Westlake Defendants reiterate the same arguments, highlighting the appropriateness of extending the automatic stay because all of DOWC's claims against the Westlake Defendants stem from the theory that U.S. Auto failed to pay DOWC over $17 million relating to vehicle service contracts. (*See generally* ECF No. 36). To that end, the Westlake Defendants contend that the amended complaint asserts claims against the Westlake parties that require proof that U.S. Auto breached their agreements with Plaintiffs. (*Id.*) As it relates to a discretionary stay, Westlake contends that DOWC failed to address the relevant factors other than prejudice. (*Id.* at 5). And that, as it relates to prejudice, DOWC failed to establish that "alleged nebulous confusion" by the public and "inquiries" warrant denial of a stay. (*Id.* at 5-6).

### III.   DISCUSSION

#### A.   Automatic Bankruptcy Stay

Section 362(a) of Title 11 provides that the filing of a petition for bankruptcy automatically stays judicial proceedings against the debtor. *See Acands*, 435 F.3d at 259. The Section 362(a) stay as to the debtor is "automatic" because it is triggered by the mere filing of the bankruptcy petition. *See id.*; *see also Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991). While the scope of Section 362(a) is broad, "its clear language . . . stays actions only against a debtor . . . . Therefore, '[i]t is universally acknowledged that an automatic stay of proceedings accorded by [Section 362(a)] may not be invoked by entities such, as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the . . . debtor." *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 509-10 (3d Cir. 1997) (quoting *Maritime*, 959 F.2d at 1205). Similarly, the automatic stay will not extend to a non-debtor, co-defendant simply because it is allegedly a joint tortfeasor with the debtor. *See Gold v. Johns-Manville Sales Corp.*, 723 F.3d 1068, 1076 (3d Cir. 1983).

Nevertheless, as the Third Circuit noted in *McCartney*, some courts have liberalized this general rule to extend the automatic bankruptcy stay to claims against solvent co-defendants in certain "unusual circumstances." *McCartney*, 106 F.3d at 509 (citing *A.H. Robbins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)). The Third Circuit has identified "two 'unusual circumstances' in which an automatic stay may be extended to non-debtor parties: (1) where the debtor is the real party in interest such that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor, and (2) where stay protection is essential to the debtor's reorganization efforts." *Jackson v. Trump Entertainment, et al.*, 2015 WL 13637411, at *2 (D.N.J. Feb. 11, 2015) (Schneider, J.) (citing *McCartney*, 106 F.3d at 510). "These two recognized exceptions accomplish the same goal as the automatic stay – protecting the debtor during pendent bankruptcy proceedings." *Id.* (citations omitted). To extend the bankruptcy stay to a non-debtor joint tortfeasor, it must be established that "a debtor and nondebtor are so bound by statute or contract that the liability of the non-debtor is imputed to the debtor by operation of law . . . ." *In re LTML Mgmt, LLC*, 638 B.R. 291, 311 (Bankr. D.N.J. 2022).

Here, the Westlake Defendants, the non-debtor joint tortfeasors, appear to argue that this

4

case involves an "unusual circumstance" warranting an extension of the automatic stay. Specifically, they claim that their liability is entirely dependent on U.S. Auto's liability, such that U.S. Auto is an indispensable party, (ECF No. 23 at 9-10), and thus presumably the real party in interest. In support of their position, the Westlake Defendants contend that they have no connection to DOWC absent Westlake's agreement to service existing U.S. Auto contractual loans. (*Id.* at 11). DOWC's allegation that the Westlake Defendants owe the DOWC parties premiums for DOWC products is contingent on the factfinder first determining that U.S. Auto failed to pay DOWC. (*Id.*) As a result, according to the Westlake Defendants, U.S. Auto is an indispensable party. (*Id.*) In opposition, DOWC disputes that its claims against the Westlake Defendants first require that liability be established against U.S. Auto. DOWC continues that its claims are based on conduct that occurred after the fact. (*See* ECF No. 31 at 38-39).

Even assuming the terms indispensable parties and real parties in interest are interchangeable, a review of the relevant case law reveals that, in this context, courts often require the solvent co-defendant to show that the bankrupt party would qualify as a necessary and indispensable party pursuant to Federal Rule of Civil Procedure 19, and that proceeding without the bankrupt party is not feasible. *See Martin v. Tap Rock Resources, LLC*, 519 F. Supp. 3d 961, 964-66 (D.N.M. 2021); *cf. F&M Distributors Inc. v. American Hardware Supply Co.*, 129 F.R.D. 494, 496-98 (W.D. Pa. 1990). While the Court agrees that there is clear overlap in DOWC's claims against U.S. Auto and the Westlake Defendants, Westlake has not met its specific burden pursuant to Rule 19, at least not on the record presented. Indeed, the Westlake Defendants' briefs do not reference Rule 19. There is no question that U.S. Auto is a proper party and that the claims against the various Defendants are entangled. However, to meet its burden, Westlake must establish that proceeding without U.S. Auto is not legally feasible. *See Martin*, 519 F. Supp. 3d at 965-66. While the Westlake Defendants have shown relatedness of the claims, they have not met this more exacting standard, or shown that the automatic stay should be extended on this basis, as they fail to analyze the issue under Rule 19. *See id.* (finding that solvent co-defendant did not meet Rule 19 showing and/or that automatic stay should be extended).

The Westlake Defendants' reliance on its purported indemnification agreement with U.S. Auto, as a basis to extend the automatic stay protection, (ECF No. 23 at 10-13), fares no better. Indeed, neither the Westlake Defendants nor DOWC have adequately addressed whether the mere right to indemnification satisfies the Third Circuit standard for extending the automatic bankruptcy stay to a non-bankrupt party. However, this Court's independent research has uncovered several decisions that have tackled this issue. These courts have held that the mere presence of a potential indemnification agreement alone does not qualify for an "unusual circumstance" or demonstrate the debtor is the real party in interest. *See, e.g., Jackson*, 2015 WL 13637411, at *2-3 (collecting cases); *see also Forcine Concrete & Constr. Co.*, 426 B.R. 520, 524 (E.D. Pa. 2010); *Hess Corp. v. Performance Texaco, Inc.*, 2008 WL 4960203, at *2 (M.D. Pa. Nov. 19, 2008).

This Court finds Judge Schneider's analysis in *Jackson* instructive:

> In the seminal case of [*A.H. Robins Co., Inc.*], the Fourth Circuit held that a debtor is the real party in interest where there is a 'suit

5

>against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case.' The *A.H. Robins* 'absolute indemnity' standard has been adopted by the Third Circuit. *See Belcufine v. Aloe*, 112 F.3d 633, 637 n.5 (3d Cir. 1997) (noting the *A.H. Robins* standard "has since been adopted by this Circuit"). **Contrary to [Defendant's] argument, the mere fact that the [agreement] contains an indemnity provision is not in and of itself sufficient to satisfy the *A.H. Robins* standard. While some contrary authority may exist in other jurisdictions, in the Third Circuit there must be sufficient evidence that the indemnity agreement is "<u>absolute</u>" in order for the debtor to be deemed the real party in interest**.

*Jackson*, 2015 WL 13637411, at *3 (emphases added).

As explained in *Jackson*, a solvent co-defendant must establish that it has an "***absolute***" right to indemnification to justify an expansion of the automatic bankruptcy stay. *See id.* (emphasis added). The Westlake Defendants fail to establish that the possibility of indemnification from U.S. Auto requires an extension of the automatic stay. They merely cite to an indemnification provision in a May 2023 agreement between them, U.S. Auto, and other parties, and then state that U.S. Auto "*likely must*" indemnify the Westlake Defendants "for any claims related to U.S. Auto Sales' alleged failure to pay [DOWC] related to DOWC products . . . ." (ECF No. 23 at 13) (emphasis added). It may well be that the Westlake Defendants are entitled to indemnification. However, this cursory reference to an indemnification provision and their contention that U.S. Auto "likely must" indemnify Westlake, is not sufficient evidence that they have an "absolute" right to indemnification. *See Jackson*, 2015 WL 13637411, at *3. Moreover, they have not explained the impact of U.S. Auto's bankruptcy on that indemnification provision or any agreement between U.S. Auto and the Westlake Defendants.

In short, to extend the automatic bankruptcy stay to a non-debtor any time there is a possibility -- or even likelihood -- of indemnification, as some courts have, would result in transforming the exception into the rule. *See id.* at *3-4. Thus, this Court agrees with the standard set forth in *Jackson* and finds that the Westlake Defendants have not shown that an extension of the automatic stay based on the possibility of indemnification is warranted.

For these reasons, the Court will not extend the automatic bankruptcy stay to cover DOWC's claims against the Westlake Defendants.

### B. <u>Discretionary Stay</u>

A discretionary stay is a different concept from an extension of the automatic bankruptcy stay and involves different considerations. *See Operational Prods. Supply & Servs., LLC v. Intelligent Surveillance Corp.*, 2022 WL 16743860, at *2-3 (D.N.J. Apr. 14, 2022) (noting parties raised but abandoned request to extend automatic bankruptcy stay; separately considering discretionary stay). This discretionary stay, pursuant to the Court's inherent authority, takes into consideration the Court's ability to control and manage its docket. *See Clinton v. Jones*, 520

6

U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). It "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id*. at 254-55. The requesting party bears the heavy burden of "mak[ing] out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id*. at 255.

In assessing whether a stay of proceedings is warranted, courts weigh a number of factors, including: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether denial of the stay would create a clear case of hardship or inequity for the moving party; (3) whether a stay would simplify the issues and the trial of the case; and (4) whether discovery is complete and/or a trial date has been set." *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 446 (D.N.J. 2014) (internal citations and quotations omitted). "Additional considerations also 'arise depending upon the circumstances....'" *Iowa Network Servs. v. AT&T Corp.*, 2019 WL 4861438, at *6 (D.N.J. Oct. 1, 2019) (quoting *Akishev*, 23 F. Supp. 3d at 446). To that end, a discretionary stay may be appropriate when a co-defendant has filed for bankruptcy. *See Operational Prods. Supply & Servs.,* 2022 WL 16743860, at *2-3 (entering discretionary stay based on co-defendant's bankruptcy).

Turning to the first consideration, the Court finds that denial of a stay would create hardship for the Westlake Defendants. It cannot be disputed that there is a transactional relationship and overlap in DOWC's claims against U.S. Auto and the Westlake Defendants. Indeed, it is seemingly undisputed that there is no contract between DOWC and the Westlake Defendants. Further, whether the Westlake Defendants are obligated to pay premiums to DOWC is intertwined with whether U.S. Auto owes such money to the DOWC parties in the first place. To require the Westlake Defendants to defend this action without U.S. Auto's involvement, especially when a right to indemnification is at issue, would create a hardship and likely be prejudicial to their defense. In short, this first factor weighs in favor of a discretionary stay. *See id.* at *2-3.

Second, DOWC has not established any prejudice that would result from a stay. The only prejudice identified is alleged consumer confusion regarding whether service warranties are "in force." (ECF No. 31 at 39). However, proceeding against Westlake would not appear to resolve that confusion so long as U.S. Auto is in bankruptcy, and prior to a determination that U.S. Auto failed to pay for DOWC products. In other words, it is doubtful the Westlake Defendants would be required to pay $17 million of alleged U.S. Auto underpayments without a determination as to U.S. Auto's liability. Thus, proceeding now against the Westlake Defendants would not appear to resolve this alleged prejudice. Finally, any prejudice resulting from mere delay in the proceedings is not enough to override the likely prejudice that would result if the Westlake Defendants were compelled to proceed now with this litigation. *Cf. Operational Prods. Supply & Servs.,* 2022 WL 16743860, at *2-3.

Third, a stay could simplify the issues in several ways. For one thing, the Westlake

Defendants' motion to dismiss could be decided in their favor, which could end the case against them. For another, a stay would also allow the U.S. Auto bankruptcy proceeding to evolve, which could bear on how or when any surviving claims against the Westlake Defendants should proceed and in what capacity.

Fourth, this case is in the early stages. An initial conference has not been scheduled, a scheduling order has not been entered, and discovery has not commenced. A trial is years away. Thus, this factor weighs in favor of a stay.

Accordingly, the Court finds that the Westlake Defendants have established good cause for the Court to exercise its discretion to stay the proceedings against them pending a resolution of U.S. Auto's bankruptcy case.

## IV.  CONCLUSION

For the reasons set forth above, the Westlake Defendants' motion to stay the case against them, (ECF No. 22), is **GRANTED**.

Further, in light of the pending motions to dismiss by both the Milestone Defendants and the Westlake Defendants, the Court exercises its discretion under Local Civil Rule 16.1(a)(1) to defer conducting an Initial Scheduling Conference, pursuant to Fed. R. Civ. P. 16, until a decision has been reached on the dispositive motions. *See In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982) (matters of docket control and the conduct of discovery committed to court's discretion).

The parties shall notify the Court within five (5) business days of the conclusion of U.S. Auto's bankruptcy case and/or a lifting of the automatic stay related to U.S. Auto.

The Clerk is requested to terminate ECF No. 22.

**SO ORDERED**.

s/Jessica S. Allen<br>
**Hon. Jessica S. Allen**<br>
**United States Magistrate Judge**

Dated: May 23, 2024

cc:  Hon. Claire C. Cecchi, U.S.D.J.